LISA M. WILDERMAN ET AL. *v.* GREGORY POWERS
(AC 28962)

Bishop, Harper and Hennessy, Js.

Argued April 23—officially released October 21, 2008

*Kenneth J. McDonnell*, for the appellant (defendant, third party plaintiff).

*Frank H. Santoro*, with whom, were *Laura Waltman*, and, on the brief, *Lawrence Adler*, for the appellee (third party defendant).

*Opinion*

HARPER, J. The defendant and third party plaintiff, Gregory Powers, appeals, challenging the summary judgment rendered by the trial court in favor of the third party defendant, Cambridge Mutual Fire Insurance Company. The third party plaintiff claims that the court improperly (1) considered evidence that had not been authenticated and would not have been admissible at trial and (2) concluded that no genuine issue of material fact existed as to whether the injuries alleged by the plaintiffs, Lisa M. Wilderman and Scott K. Wilderman,

were caused by criminal acts committed by the third party plaintiff.[1] We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the issues raised in the third party plaintiff's appeal. The plaintiffs brought a three count, second amended complaint, dated April 29, 2005, against the third party plaintiff. Count one, entitled "Negligent Infliction of Emotional Distress," and count two, entitled "Intentional Infliction of Emotional Stress," asserted causes of action by Lisa Wilderman. Count three, entitled "Loss of Consortium," asserted a cause of action by Scott Wilderman.

Count one set forth the following factual allegations. At times relevant, the plaintiffs, who are husband and wife, lived next door to the third party plaintiff and his wife. Prior to August 5, 2004, the plaintiffs and the third party plaintiff, along with his wife, carried on "a friendly and neighborly relationship" that included "eating meals together, spending time together socially [and] assisting each other in the care and maintenance of their properties . . . ." On the evening of August 5, 2004, the third party plaintiff entered the plaintiffs' property, approached a bathroom window and attempted to photograph Lisa Wilderman while she was partially unclothed. Lisa Wilderman was startled upon detecting the presence of someone outside the bathroom window with a camera. She notified the police. That evening, the police arrested the third party plaintiff, while in possession of a camera, in the wooded area across from the plaintiffs' residence. The police subsequently executed a search warrant at the residence of the third

---

[1] The third party plaintiff also claims that the court, in rendering summary judgment, improperly concluded that a material issue of fact as to whether he intended to harm Lisa Wilderman did not exist and that the complaint filed by the plaintiffs did not allege invasion of privacy. Because we conclude that the court properly concluded that the penal exclusion to coverage applied, we need not address these additional claims.

party plaintiff. This search yielded photographs, video-tapes, computer equipment and a telescope that had been focused on the plaintiffs' residence. Lisa Wilderman is depicted in photographs and videotapes seized by the police.

Count one further alleged: "As a result of the events of the evening of August 5, 2004, as well as a result of learning the extent and nature of the [third party plaintiff's] surveillance activities of her, [Lisa Wilderman] has suffered severe emotional shock, distress, depression and anxiety to her loss and damage. . . . The injuries and losses of [Lisa Wilderman] were caused by the actions and conduct of the [third party plaintiff] in conducting surveillance of [her] both on the evening of August 5, 2004 as well as for sometime prior thereto." Lisa Wilderman further alleged that the third party plaintiff "knew or should have known that his conduct . . . involved an unreasonable risk of causing emotional distress and harm [to her] which might result in illness or bodily injury." Lisa Wilderman further alleged that as a result of the conduct of the third party plaintiff, she suffered emotional distress, anxiety, fear and depression and that she expended money for medical care and treatment, including counseling and therapy. She further alleged that the plaintiffs "have been forced to sell their home for a reduced price in order to facilitate their ability to move out of the neighborhood, to their further loss and harm."

In count two, Lisa Wilderman alleged in relevant part: "The [third party plaintiff] either intended to inflict the emotional distress upon [her], or knew or should have known that the emotional distress and suffering incurred by [her] was the likely result of his conduct. . . . The conduct of the [third party plaintiff] in both maintaining a facade of neighborly friendship with [the plaintiffs], while at the same time engaging in voyeuristic surveillance of [Lisa Wilderman] and photographing

and video taping her, was extreme and outrageous." In count three, Scott Wilderman alleged that as a result of the conduct of the third party plaintiff, he has suffered the loss of consortium of his spouse.

The third party plaintiff admitted that he approached the plaintiffs' bathroom window on August, 5, 2004, attempted to photograph Lisa Wilderman and subsequently was arrested with a camera in his possession. He also admitted that police seized photographs, videotapes, computer equipment and a telescope from his residence. The third party plaintiff denied the allegations that he negligently or intentionally caused Lisa Wilderman to suffer emotional distress or related harm and denied that he caused the plaintiffs to incur any damages.

Thereafter, the third party plaintiff moved to cite in Cambridge Mutual Fire Insurance Company as a third party defendant in the action. The court granted the motion. The third party plaintiff filed a complaint against the third party defendant, alleging that at times relevant, he was an insured under an insurance policy issued by the third party defendant. The third party plaintiff claimed that the third party defendant "agreed to pay on behalf of its insured all sums which an insured shall become legally obligated to pay as damages because of any personal injury caused by an insured, not exceeding the limits specified in the policy, and to defend any suit alleging such personal injury and seeking damages which are payable under the terms of the policy." The complaint further alleged that the policy "defines personal injury to include invasion of privacy."

Additionally, the third party plaintiff alleged that the plaintiffs had commenced an action against him, alleging that he had violated their "rights to privacy" and had "caus[ed] emotional distress and other damages."

He alleged that he duly notified the third party defendant of the incident and the action brought by the plaintiffs but that contrary to his rights under the policy, the third party defendant had refused to defend the action, to reimburse him for counsel fees, to satisfy any judgment that may be rendered against him or to assume any responsibility for the action. The third party plaintiff sought damages related to this alleged violation of his rights under the policy.

The third party defendant admitted that it had issued an insurance policy to the third party plaintiff and that an endorsement to the policy defined personal injury to include injury arising from invasion of privacy. The third party defendant also admitted that it had refused to defend the third party plaintiff, to reimburse him for costs necessary to defend the action or to satisfy any judgment that may be rendered against him. The third party defendant raised two exclusions to coverage, set forth in the policy, as special defenses. In the first special defense, the third party defendant alleged that the third party plaintiff is not entitled to coverage because his conduct fell "within the exclusion to coverage for bodily injury or property damage which is expected or intended by the insured." In the second special defense, the third party defendant claimed that the third party plaintiff was not entitled to coverage because his conduct fell "within the exclusion to coverage for injury caused by a violation of a penal law or ordinance committed by or with the knowledge or consent of an insured." The third party plaintiff denied the allegations raised by these special defenses.

On December 1, 2006, the third party plaintiff and the third party defendant filed motions for summary judgment. In support of his motion, the third party plaintiff submitted his affidavit concerning the events in question as well as the insurance policy at issue. In

support of its motion, the third party defendant submitted the second amended complaint filed by the plaintiffs, the insurance policy at issue, the arrest report concerning the third party plaintiff, a transcript of proceedings in the Superior Court at the time of the third party plaintiff's sentencing for disorderly conduct on July 7, 2005, and excerpts from deposition testimony of the third party plaintiff.

On February 5, 2007, the court held a hearing on the summary judgment motions. By memorandum of decision, the court granted the third party defendant's motion for summary judgment. The court noted that the third party plaintiff claimed that coverage existed by virtue of an endorsement to the insurance policy issued by the third party defendant. The court concluded that coverage did not exist for three reasons. First, the court concluded that no genuine issue of material fact existed as to the fact that the third party plaintiff engaged in intentional, rather than negligent, conduct and that the injuries claimed were the natural result of his conduct. The court concluded that the policy exclusion for injury that is expected or intended by the insured applied. Second, the court concluded that although the endorsement extends coverage to bodily injury, which the endorsement defines to encompass invasion of privacy, the plaintiffs' complaint did not allege invasion of privacy but other torts. Accordingly, the court concluded, as a matter of law, that the plaintiffs' complaint did not give rise to any of the third party defendant's duties under the policy. Finally, the court concluded that the exception in the policy for injuries caused by violation of penal laws or ordinances was applicable. In this regard, the court concluded that there was no genuine issue of material fact as to whether the third party plaintiff engaged in the conduct alleged in the complaint and whether such conduct was criminal

in nature.[2] This appeal followed.[3] Additional facts will be set forth as relevant.

Before turning to the claims raised by the third party plaintiff, we set forth the principles that govern our review. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant [a] defendant's motion for summary

---

[2] After the court rendered summary judgment as to the third party complaint, the plaintiffs and the third party plaintiff filed a stipulation for judgment. The court rendered judgment in accordance with the parties' stipulation. Pursuant to the stipulation, the plaintiffs withdrew count two of their complaint, sounding in intentional infliction of emotional distress, and count three of their complaint, setting forth a loss of consortium claim. With regard to the remaining count, the court awarded Lisa Wilderman $140,000 in damages. The third party plaintiff agreed to make payment to the plaintiffs in the amount of $7500, the parties stipulating that the third party plaintiff already had made an additional payment to the plaintiffs in the amount of $2763.08. The third party plaintiff assigned to the plaintiffs his rights against the third party defendant. The third party plaintiff agreed to pursue his appellate rights against the third party defendant, and the plaintiffs agreed to pursue collection of the unpaid portion of the judgment against the third party defendant.

[3] After the court rendered summary judgment in favor of the third party defendant, the third party plaintiff timely filed a notice of his intent to appeal from the court's ruling. See Practice Book § 61-5.

judgment is plenary." (Internal quotation marks omitted.) *Rivers* v. *New Britain*, 288 Conn. 1, 10, 950 A.2d 1247 (2008).

I

First, the third party plaintiff claims that the court improperly relied on documents submitted by the third party defendant in support of its motion for summary judgment. We decline to review this unpreserved claim.

As set forth previously, among the documents submitted to the court by the third party defendant were excerpts from deposition testimony of the third party plaintiff, a transcript from a sentencing proceeding concerning the third party plaintiff and an arrest report generated by the police following the third party plaintiff's arrest. The third party plaintiff claims that this evidence was not authenticated and would not have been admissible at trial. The third party plaintiff claims that for these reasons, the court improperly relied on the evidence in rendering summary judgment. The third party plaintiff argues: "[The court] considered statements in police reports that contained inadmissible hearsay, statements in transcripts that were not necessarily made under oath and statements in depositions that may not have been admissible without a proper foundation. Some of the statements were ambiguous and subject to more than one reasonable interpretation." The third party plaintiff deems these documents to be "unverified and ambiguous" and argues that as a result of the court's reliance on them, the court considered criminal charges for which he was not convicted. The third party plaintiff claims that the court relied on these documents in concluding that he intended to harm Lisa Wilderman, that all of the acts he committed were criminal in nature and that he caused the injuries claimed.

The record reflects that during the hearing on the motions for summary judgment, the attorney representing the third party plaintiff stated: "First, I would point out that I and my client filed an affidavit in support of our motion for summary judgment. There's a lot of evidence submitted on behalf of [the third party defendant] but no affidavits. There are depositions. I'm not disputing that the transcripts are there, but there is law that says that evidence needs to come forward in the form of an affidavit. A copy of the police report, for instance, is simply just attached, and I would submit, Your Honor, that that's inappropriate for a motion for summary judgment." The court did not address this objection, and our review of the transcript from the hearing on the summary judgment motions as well as the third party plaintiff's filings does not reveal any additional objections relevant to the present claim.

The claim raised on appeal, which is whether the documentary evidence submitted by the third party defendant should be considered, is evidentiary in nature. See *Barlow* v. *Palmer*, 96 Conn. App. 88, 91, 898 A.2d 835 (2006) (applying abuse of discretion standard of review to claim that court improperly excluded documentary evidence submitted in support of motion for summary judgment). It is well settled that this court will not entertain claims of evidentiary error that were not distinctly raised before the trial court. Practice Book § 60-5 provides in relevant part: "The [reviewing] court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ." "[T]he standard for the preservation of a claim alleging an improper evidentiary ruling at trial is well settled. This court is not bound to consider claims of law not made at the trial. . . . In order to preserve an evidentiary ruling for review, trial counsel must object

properly. . . . In objecting to evidence, counsel must properly articulate the basis of the objection so as to apprise the trial court of the precise nature of the objection and its real purpose, in order to form an adequate basis for a reviewable ruling. . . . Once counsel states the authority and ground of [the] objection, any appeal will be limited to the ground asserted." (Internal quotation marks omitted.) *State* v. *Simpson*, 286 Conn. 634, 645, 945 A.2d 449 (2008).

Our review of the record reveals that at the summary judgment hearing, the third party plaintiff did not object to the admissibility of the documentary evidence submitted by the third party defendant. The objection of the third party plaintiff, set forth previously, did not encompass a claim that the documentary evidence was inadmissible for the reasons now claimed on appeal. Rather, the third party plaintiff's objection was limited to the ground that the third party defendant did not submit an affidavit in support of its motion. We conclude that the objection raised did not alert the court to the different claim of error raised on appeal. The third party plaintiff has not argued that he is entitled to any extraordinary means of review of this unpreserved claim, and we decline to afford it review.

## II

The third party plaintiff also claims that the court improperly concluded that no genuine issue of material fact existed as to whether the injuries alleged by the plaintiffs were caused by criminal acts he committed. We disagree.

As set forth previously, the plaintiffs alleged that the third party plaintiff committed a variety of voyeuristic acts. The plaintiffs alleged that on August 5, 2004, the third party plaintiff approached the bathroom window and "either did photograph or attempted to photograph [Lisa Wilderman] who was [partially undressed] in said

bathroom." The plaintiffs alleged that in executing a search warrant following the arrest of the third party plaintiff, the police seized from the residence of the third party plaintiff "video tapes, photographs, computer equipment and a telescope . . . ." The plaintiffs further alleged that Lisa Wilderman was depicted in these photographs and videotapes and that the telescope had been focused on her residence. The plaintiffs alleged that "[a]s a result of the events of the evening of August 5, 2004, as well as a result of learning the extent and nature of the [third party plaintiff's] surveillance activities of her," the plaintiffs had suffered the damages claimed.

The police report submitted by the third party defendant reflects that the third party plaintiff was arrested for several crimes, including simple trespass, disorderly conduct, voyeurism and stalking in the third degree. The transcript of the sentencing proceeding submitted by the third party defendant reflects that on July 7, 2005, the third party plaintiff entered a plea of guilty to a charge of disorderly conduct. At the proceeding, Scott Wilderman addressed the court concerning the third party plaintiff's criminal conduct. Scott Wilderman read a statement prepared by Lisa Wilderman, who described the third party plaintiff's "long-term pattern of violating [her] privacy." Scott Wilderman emphasized that the third party plaintiff had "been stalking and videotaping [his] wife for an indeterminate period of time." Before imposing sentence, in accordance with a plea agreement, the court stated that it was concerned by the fact that the third party plaintiff's conduct could not be described as an "isolated incident" but as a pattern of surveillance. Exercising his right to allocution, the third party plaintiff stated that he was "ashamed and embarrassed [for his] actions." The court then sentenced the third party plaintiff to a period of incarceration of ninety days, execution suspended, and

a period of eighteen months of probation with special conditions, including the payment of restitution to the plaintiffs.

The third party defendant also submitted excerpts from deposition testimony of the third party plaintiff. During his examination by the plaintiffs' attorney, the third party plaintiff discussed his guilty plea in the criminal proceeding. The following relevant colloquy occurred:

"Q. You [pleaded] guilty to disorderly conduct?

"A. Yes.

"Q. What was your understanding of disorderly conduct?

"A. My understanding is that I was on their property without their permission.

"Q. Did it include the photographing activities?

"A. I believe that was included in their terms.

"Q. Do you believe that the term disorderly conduct includes the photographing activities?

"A. [T]hat's what it included . . . all those activities that I was arrested for.

"Q. Okay, so everything that you did, the lingerie, the photographs gardening, the photographs with her friend, the Monday prior to the actual incident—

"A. Yes.

"Q. —all of those events in your mind fall within the definition of disorderly conduct, which is what you [pleaded] guilty to?

"A. Which I [pleaded] guilty to, yes.

"Q. And you believe you were guilty of those acts?

"A. Yes."

The third party plaintiff also testified that his conduct · was inappropriate and that it was of his free will.

Plainly, these statements by the third party plaintiff were an admission that he was criminally liable for all of the crimes for which he was arrested, not merely the disorderly conduct charge. The third party plaintiff's statements were also an admission that *all* of his voyeuristic conduct, the factual gravamen of the plaintiffs' complaint, was criminal in nature. The third party plaintiff testified that this conduct, in which he freely engaged, included surveillance and photographing activities of Lisa Wilderman prior to August 5, 2004. The third party defendant properly relied on the statements of the third party plaintiff, a party opponent, to establish the factual predicate for its special defense that the conduct fell within an exception to coverage. "Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact, together with the evidence disclosing the existence of such an issue." (Internal quotation marks omitted.) *Sunset Mortgage v. Agolio*, 109 Conn. App. 198, 202, 952 A.2d 65 (2008). The third party defendant presented evidence that the conduct at issue was criminal in nature. The third party plaintiff did not submit any relevant evidence to refute the existence of this material fact.

On the basis of this evidence, we conclude, as did the trial court, that no genuine issue of material fact existed as to whether the conduct of the third party plaintiff, as alleged in the complaint, was criminal in nature. This conclusion is dispositive of the issue of the liability of the third party defendant regardless of whether the plaintiffs could demonstrate that such conduct caused them any degree of harm for which damages might be awarded. The third party plaintiff asserts

that the third party defendant's contractual duty to defend and indemnify arose from an endorsement to the homeowner's policy. Specifically, the third party plaintiff claims that the plaintiffs' injuries constitute "personal injury" as defined by the endorsement. That endorsement, however, provides in relevant part: "Personal injury insurance does not apply to . . . injury caused by a violation of a penal law or ordinance committed by or with the knowledge or consent of an insured . . . ." On the basis of the admissions of the third party plaintiff, we conclude that the third party defendant proved as a matter of law that this policy exclusion applied. Accordingly, we conclude that the court properly rendered judgment in favor of the third party defendant.

The judgment is affirmed.

In this opinion the other judges concurred.