LISA BRUNO *v*. BRUCE GELLER ET AL.
(AC 33636)

Bear, Sheldon and Peters, Js.

Argued April 16—officially released July 10, 2012

*Lisa Bruno,* pro se, the appellant (plaintiff).

*Kenneth E. Lee,* pro hac vice, with whom were *Richard P. Colbert* and *Miriam L. Alinikoff,* for the appellees (defendants).

*Opinion*

BEAR, J. The plaintiff, Lisa Bruno, appeals from the summary judgment of the trial court holding that her claims against the defendants, Dalton Greiner Hartman Maher & Company, LLC (Dalton), Boston Private Financial Holdings, Inc. (Boston Financial), and Bruce Geller, co-president and chief executive officer of Dalton, were barred by the doctrine of collateral estoppel. On appeal, the plaintiff claims that the court improperly (1) "failed to . . . apply the rules regarding summary judgment," (2) "failed to apply the . . . criteria for collateral estoppel" and (3) violated her procedural and substantive due process rights under article first, §§ 10 and 20, of the constitution of Connecticut.[1] We affirm the judgment of the trial court, albeit, in part, on other grounds. See *Hopkins* v. *O'Connor,* 282 Conn. 821, 827, 925 A.2d 1030 (2007) ("[w]here the trial court reaches a correct

---

[1] The plaintiff also claims that the court improperly relied on the factual findings and conclusions of the Appellate Division of the New York Supreme Court. We do not reach this issue, however, because it has no bearing on the outcome of this appeal. See *In re Matthew S.,* 60 Conn. App. 127, 131 n.4, 758 A.2d 459 (2000); see also *Kozlowski* v. *Commissioner of Transportation,* 274 Conn. 497, 500 n.6, 876 A.2d 1148 (2005).

decision but on mistaken grounds, this court has repeatedly sustained the trial court's action if proper grounds exist to support it" [internal quotation marks omitted]).

The following facts are relevant to our resolution of the plaintiff's appeal. During the plaintiff's dissolution proceedings against her then husband, Stephen Bruno, the plaintiff filed a motion for contempt on the ground that Stephen Bruno had violated the automatic orders of the court by "unilaterally authoriz[ing] the forfeiture and subsequent transfer of a 5 [percent] partnership interest . . . in [Dalton] which was estimated to be worth between $8 [million] and $10 [million] for zero consideration [or] compensation" and by other similar actions. The plaintiff, inter alia, called Geller as a witness during the extended hearing on her motion for contempt.

In the plaintiff's closing argument on her motion, which she submitted in writing to the dissolution court as a posthearing brief, she requested that the court in relevant part find that Stephen Bruno had violated the automatic orders of the court and that "the representations made by [Dalton] and [Stephen Bruno] with respect to the [s]ettlement [a]greement [between them] [we]re 'a sham.' " She contended that the evidence submitted at the hearing on her contempt motion demonstrated, in part, that Stephen Bruno, "with help from his [Dalton colleagues] surreptitiously invented a fraudulent scheme ([Stephen Bruno's] termination [of employment from Dalton]) and a [s]ettlement [a]greement designed to circumvent the existing rules of the [Dalton] [a]greement . . . by having [Stephen Bruno's] LLC [p]oints, [c]apital [a]ccount, severance payout and . . . equity seemingly '*DISAPPEAR*' into thin air without a trace." (Emphasis in original.) She also argued that Stephen Bruno's employment at Dalton was not terminated for cause, but that "he orchestrated his own exit from the firm as part of an overall scheme

to minimize future alimony payments" and that "[Stephen Bruno] and his [Dalton] colleagues ha[d] perpetrated a significant fraud against [her] and the [c]ourt." She further asserted that "there was ample motivation in the form of a financial incentive to entice [Dalton] and Geller into cooperating with [Stephen Bruno's] fraud scheme," and that "[b]ased on the evidence [produced at the hearing] in the form of documentation, testimony and missing documentation, [she was] alleg[ing] fraud by both [Stephen Bruno] and his [former Dalton] colleagues." She also argued that "[a] fraud scheme [had] occurred in which [Stephen Bruno] conspired with various attorneys and his former employer [Dalton] to devise, orchestrate and execute a complex fraudulent conveyance [or] conversion scheme directed at [the plaintiff] and the [c]ourt."

By memorandum of decision, on March 17, 2008, the dissolution court denied the plaintiff's motion for contempt and denied her claims for relief, specifically finding in relevant part that Dalton had terminated Stephen Bruno's employment for cause, that "a fraud scheme [had] not occurred and that none of the allegations of a fraud scheme [had] been proven [by the plaintiff]." The court also found that the plaintiff had "failed to present any credible evidence of any acts of bad faith by [Dalton] or Mintz Levin [Cohen Ferris Glovsky and Popeo, P.C. (Mintz Levin)]." Although the plaintiff appealed from the final judgment in the dissolution case, she later withdrew that appeal.

On December 17, 2008, the plaintiff filed an action in the New York Supreme Court against Stephen Bruno, Dalton, Boston Financial and Mintz Levin, stating that the action arose "out of a conspiracy between . . . Stephen Bruno . . . his former employer [Dalton], the company holding a majority interest in his former employer [Boston Financial] and his attorneys [Mintz Levin], to devise, orchestrate and execute a fraudulent

conveyance scheme with the actual intent to hinder, delay and/or defraud the [p]laintiff from receiving an equitable distribution of interests [Stephen] Bruno held in [Dalton]." She further alleged that "in the middle of [their] marital dissolution proceedings, [Stephen] Bruno, with the substantial assistance of the remaining [d]efendants, [had] staged [Stephen] Bruno's termination from [Dalton] and negotiated a [s]ettlement [a]greement allowing [Stephen] Bruno's assets to be forfeited back to either [Dalton] and/or Boston [Financial] . . . . [I]t is clear that the alleged forfeiture was conducted merely to divest [the] [p]laintiff of the amounts she would have received as a result of the marital dissolution action." The plaintiff requested that the New York court "set aside the [d]efendants' fraudulent conveyance and award [her] damages for, inter alia, breach of fiduciary duty, breach of contract, breach of the duty of good faith and fair dealing and unjust enrichment, as well as impose an award of attorneys' fees and costs against [the] [d]efendants for their willful and wanton fraudulent conduct."

In a September 1, 2009 written decision, the New York Supreme Court, applying Connecticut law, dismissed the plaintiff's complaint in its entirety on the ground that it was barred by the doctrine of collateral estoppel because the Connecticut dissolution court had determined that there had been no fraud in Stephen Bruno's termination of employment from, and settlement agreement with, Dalton. The plaintiff then appealed from that judgment to the Appellate Division of the New York Supreme Court, which affirmed the judgment. See *Bruno* v. *Bruno*, 83 App. Div. 3d 165, 923 N.Y.S.2d 23 (2011). The New York Court of Appeals denied her further review. *Bruno* v. *Bruno*, 18 N.Y.3d 805, 963 N.E.2d 791, 940 N.Y.S.2d 214 (2012).

On August 26, 2010, the plaintiff filed the present action in the Connecticut Superior Court, alleging in part, as she had in the New York action, that this "action

arises out of a conspiracy between . . . Stephen Bruno
. . . his former employer [Dalton], the company hold-
ing a majority interest in his former employer [Boston
Financial] and his attorneys [Mintz Levin], to devise,
orchestrate and execute a fraudulent conveyance
scheme with the actual intent to hinder, delay and/
or defraud the [p]laintiff from receiving an equitable
distribution of interests [Stephen] Bruno held in [Dal-
ton]." Although the defendants cited in the present
action are not identical to those cited in the New York
action,[2] this language, expressing the nature of each
action, is identical in both actions.

On February 14, 2011, the defendants filed a motion
for summary judgment on the grounds of res judicata
and collateral estoppel. On April 29, 2011, the court
granted the defendants' motion, concluding that the
plaintiff's complaint was barred by the doctrine of col-
lateral estoppel. This appeal followed. Additional facts
will be set forth as necessary.

I

The plaintiff first claims that the court improperly
"failed to . . . apply the rules regarding summary judg-
ment." Specifically, she claims that the court improperly
(1) relied on the defendants' affidavit and their uncerti-
fied documents and (2) considered the defendants'
motion for summary judgment despite the defendants'
failure to plead in accordance with Practice Book §§ 10-
50 and 10-51. We will consider each of these claims
in turn.

A

The plaintiff claims that the "defendants failed to
comply with Practice Book § 17-45 and § 17-46 regard-
ing affidavits and supporting documentation and, there-
fore, the court's reliance on these documents [to

---

[2] The New York action had been brought against Stephen Bruno, Dalton,
Boston Financial and Mintz Levin; the current action is brought against
Geller, Dalton and Boston Financial.

support the] granting of summary judgment was clear error." She explains, "[r]ather than provide an affidavit or any authenticated documents upon the filing of their motion, the defendants filed an unlawful reply memorandum in further support of their motion . . . to which they attached an illegal, self-serving affidavit from . . . the attorney of record for the defendants, and additional documents which were also not certified [or] authenticated and thus also inadmissible." She contends that the court acted improperly in considering the late affidavit and unauthenticated and uncertified documents. We disagree.

"Practice Book § 17-45 provides in relevant part that [a] motion for summary judgment shall be supported by such documents as may be appropriate, including but not limited to affidavits, certified transcripts of testimony under oath, disclosures, written admissions and the like. . . . That section does not mandate that those documents be attached in all cases, but we note that [o]nly evidence that would be admissible at trial may be used to support or oppose a motion for summary judgment. . . . Practice Book § [17-45], although containing the phrase including but not limited to, contemplates that supporting documents to a motion for summary judgment be made under oath or be otherwise reliable. . . . [The] rules would be meaningless if they could be circumvented by filing [unauthenticated documents] in support of or in opposition to summary judgment. . . .

"Therefore, before a document may be considered by the court [in connection with] a motion for summary judgment, there must be a preliminary showing of [the document's] genuineness, i.e., that the proffered item of evidence is what its proponent claims it to be. The requirement of authentication applies to all types of evidence, including writings . . . . Conn. Code Evid. § 9-1 (a), commentary. Documents in support of or in

opposition to a motion for summary judgment may be authenticated in a variety of ways, including, but not limited to, a certified copy of a document or the addition of an affidavit by a person with personal knowledge that the offered evidence is a true and accurate representation of what its proponent claims it to be." (Internal quotation marks omitted.) *Gianetti* v. *Anthem Blue Cross & Blue Shield of Connecticut*, 111 Conn. App. 68, 72–73, 957 A.2d 541 (2008), cert. denied, 290 Conn. 915, 965 A.2d 553 (2009). Additionally, in considering a motion for summary judgment, "[i]t is within the court's discretion whether to accept or decline [to accept] . . . supplemental evidence." *Nieves* v. *Cirmo*, 67 Conn. App. 576, 587 n.4, 787 A.2d 650, cert. denied, 259 Conn. 931, 793 A.2d 1085 (2002).

In this case, the defendants filed a motion for summary judgment to which several documents were attached, including a copy of the dissolution court's decision on the plaintiff's motion for contempt, portions of the transcript of the hearing on the motion for contempt and a copy of the plaintiff's posthearing brief on the motion for contempt, the summons and complaint filed by the plaintiff in the New York action and a copy of the New York Supreme Court decision. The defendants did not provide an affidavit in support of their motion for summary judgment, nor were the documents they submitted certified. In response, the plaintiff filed an objection, arguing that the defendants' motion for summary judgment was not supported by properly authenticated documentation. The defendants then filed a "reply memorandum" that included an affidavit of the attorney of record attesting to the authenticity of the documents that had been submitted with the original motion and attaching a copy of the newly published decision of the Appellate Division of the New York Supreme Court, affirming the decision of the New York Supreme Court.

The trial court held a hearing on the defendants' motion for summary judgment, at which time the plaintiff submitted a supplemental objection to the defendants' motion for summary judgment, alleging, in part, that the defendants' affidavit and their submission of the decision of the Appellate Division of the New York Supreme Court were improper. During the hearing on the motion for summary judgment, however, the plaintiff neither orally objected nor argued to the court about the newly submitted affidavit or the other documents. The court thereafter considered the documents submitted by the defendants in support of their motion for summary judgment and, after due consideration, granted the motion.

In response to the plaintiff's claim that the documents and the affidavit were improper, the defendants argue that none of the documents submitted needed to be certified and that they provided an affidavit only because the plaintiff raised a concern about the lack of certification of the other documents. They argue that the trial court always has the prerogative to take judicial notice of court documents and that the submitted documents "were true and accurate copies of pleadings and decisions in prior and related matters . . . ." Furthermore, they argue, the affidavit supplied by the attorney of record was sufficient to address any concern that the plaintiff might have had regarding the authenticity of the other documents.

Whether the court should have considered the documentary evidence and the affidavit submitted by the defendants presents an evidentiary issue to which we apply an abuse of discretion standard of review. See *Wilderman* v. *Powers*, 110 Conn. App. 819, 828, 956 A.2d 613 (2008) (claim that court should not have considered unauthenticated documents in assessing motion for summary judgment is evidentiary in nature). We are not persuaded by the plaintiff's arguments concerning

this evidentiary matter, and we conclude that the court did not abuse its discretion in accepting the affidavit of the defendants' counsel attesting to the authenticity of the submitted documents.[3] See *Mac's Car City, Inc.* v. *American National Bank*, 205 Conn. 255, 257–58, 532 A.2d 1302 (1987) (where previous motion for summary judgment on ground of res judicata denied because of lack of supporting documents, court considered attorney's affidavit attesting to authenticity of newly submitted documents, including prior pleadings, in support of renewed motion for summary judgment). Further, we conclude that the affidavit sufficiently provided support for the authenticity and accuracy of documents that had been submitted.

B

The plaintiff next claims that the court improperly considered the defendants' motion for summary judgment despite the fact that the defendants "failed to plead their motion in accordance with the strict mandatory requirements set forth in Practice Book § 10-50[4]

[3] We need not decide whether, in the absence of an affidavit attesting to the authenticity of these documents, certification pages for some or all of the documents were necessary. We point out, however, that the trial court is permitted to take judicial notice of court files in other cases. See *Jewett* v. *Jewett*, 265 Conn. 669, 678 n.7, 830 A.2d 193 (2003) ("[t]here is no question that the trial court may take judicial notice of the file in another case" [internal quotation marks omitted]); *Joe's Pizza, Inc.* v. *Aetna Life & Casualty Co.*, 236 Conn. 863, 865 n.4, 675 A.2d 441 (1996) (taking judicial notice of outcome of criminal trial); *McCarthy* v. *Commissioner of Correction*, 217 Conn. 568, 580 n.15, 587 A.2d 116 (1991) (court may take judicial notice of contents of files in other Superior Court cases). We also note that, in this case, the plaintiff does not attack either the authenticity of the submitted documents or their accuracy.

[4] Practice Book § 10-50 provides: "No facts may be proved under either a general or special denial except such as show that the plaintiff's statements of fact are untrue. Facts which are consistent with such statements but show, notwithstanding, that the plaintiff has no cause of action, must be specially alleged. Thus, accord and satisfaction, arbitration and award, coverture, duress, fraud, illegality not apparent on the face of the pleadings, infancy, that the defendant was non compos mentis, payment (even though nonpayment is alleged by the plaintiff), release, the statute of limitations

and § 10-51."[5] Specifically, she argues that the defendants failed to identify which special defense was applicable to which count of the complaint and failed to state that they were moving for summary judgment on the basis of their special defenses. The defendants respond that it was quite clear to the court that their special defenses went to all counts of the plaintiff's complaint and that they complied with the rules of practice in raising and in litigating their special defenses. We agree with the defendants.

In their answer and special defenses, the defendants set forth four special defenses, as follows:

"[First Special Defense] The claims in the [c]omplaint are barred, in whole or in part, by the doctrine of res judicata based on, among other things, the decision in *Bruno* v. *Bruno*, Index No. 116822/08, decided on or about September 1, 2009, by the Supreme Court of the [s]tate of New York.

"[Second Special Defense] The claims in the [c]omplaint are barred, in whole or in part, by the doctrine of collateral estoppel based on, among other things, the decision in *Bruno* v. *Bruno*, Docket No. FA05-40044906-S, decided on or about March 17, 2008, by the Superior Court [in] Danbury (*Axelrod, J.*).

---

and res judicata must be specially pleaded, while advantage may be taken, under a simple denial, of such matters as the statute of frauds, or title in a third person to what the plaintiff sues upon or alleges to be the plaintiff's own."

[5] Practice Book § 10-51 provides: "Where several matters of defense are pleaded, each must refer to the cause of action which it is intended to answer, and be separately stated and designated as a separate defense, as, First Defense, Second Defense, etc. Where the complaint or counterclaim is for more than one cause of action, set forth in several counts, each separate matter of defense should be preceded by a designation of the cause of action which it is designed to meet, in this manner: First Defense to First Count, Second Defense to First Count, First Defense to Second Count, and so on. Any statement of a matter of defense resting in part upon facts pleaded in any preceding statement in the same answer may refer to those facts as thus recited, without otherwise repeating them."

"[Third Special Defense] The claims in the [c]omplaint are barred, in whole or in part, by the applicable statute of limitations, Connecticut General Statutes [§] 52-577.

"[Fourth Special Defense] The claims in the [c]omplaint are barred, in whole or in part, by the applicable statute of limitations, Connecticut General Statutes [§] 52-584."

"The fundamental purpose of a special defense, like other pleadings, is to apprise the court and opposing counsel of the issues to be tried, so that basic issues are not concealed . . . ." (Internal quotation marks omitted.) *Martino* v. *Scalzo*, 113 Conn. App. 240, 245, 966 A.2d 339, cert. denied, 293 Conn. 904, 976 A.2d 705 (2009). In the present case, each of the defenses was applicable to each count of the entire complaint, as each defense states in relevant part that "[t]he claims in the [c]omplaint are barred . . . ." We conclude that there was no need for the defendants to list each of the nineteen counts of the plaintiff's complaint and separately set forth each special defense with respect to each separate count.

As to the propriety of the defendants' motion for summary judgment, we conclude that the defendants properly set forth the basis of the motion. Specifically, the defendants alleged the following: "[The defendants] respectfully move for summary judgment as to all counts of [the] [p]laintiff's complaint. As set forth more fully in the attached memorandum of law, [the] [p]laintiff's claims are barred in their entirety by the applicable doctrines of collateral estoppel and res judicata." We conclude that the plaintiff's claim that this pleading was defective merely because it did not contain a statement that the defendants were moving for summary judgment pursuant to their first and second special defenses,

when it was quite obvious that they were doing so, lacks legal substance.

## II

The plaintiff next claims that the court improperly rendered summary judgment by failing to apply the proper criteria for collateral estoppel. Although the court relied on the doctrine of collateral estoppel in rendering summary judgment in favor of the defendants, we conclude that the plaintiff's complaint is precluded by the doctrine of res judicata. Accordingly, we agree with the court that judgment in favor of the defendants was appropriate, albeit on other grounds.

As a preliminary matter, we set forth the applicable standard of review. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing . . . that the party is . . . entitled to judgment as a matter of law. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Hopkins* v. *O'Connor*, supra, 282 Conn. 829. In addition, the applicability of res judicata or collateral estoppel presents a question of law over which we employ plenary review. *Weiss* v. *Weiss*, 297 Conn. 446, 458, 998 A.2d 766 (2010).

"Claim preclusion (res judicata) and issue preclusion (collateral estoppel) have been described as related ideas on a continuum. [C]laim preclusion prevents a litigant from reasserting a claim that has already been decided on the merits. . . . [I]ssue preclusion . . .

prevents a party from relitigating an issue that has been determined in a prior suit." (Internal quotation marks omitted.) *Rocco* v. *Garrison*, 268 Conn. 541, 554, 848 A.2d 352 (2004). "The doctrines of res judicata and collateral estoppel protect the finality of judicial determinations, conserve the time of the court, and prevent wasteful relitigation." (Internal quotation marks omitted.) *Daoust* v. *McWilliams*, 49 Conn. App. 715, 723, 716 A.2d 922 (1998). "[T]he doctrine of . . . claim preclusion . . . [provides that] a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action [between the same parties or those in privity with them] on the same claim. A judgment is final not only as to every matter which was offered to sustain the claim, but also as to any other admissible matter which might have been offered for that purpose. . . . The rule of claim preclusion prevents reassertion of the same claim regardless of what additional or different evidence or legal theories might be advanced in support of it." (Citations omitted; internal quotation marks omitted.) *Fink* v. *Golenbock*, 238 Conn. 183, 191, 680 A.2d 1243 (1996).

"We recognize that the mere explication of the doctrine of claim preclusion does not resolve all difficulties which may appear at the point of application. . . . [T]he law of estoppel by judgment is well settled, the only difficulty being in its application to the facts. . . . The difficulty has always been in determining what matters are precluded by the former adjudication. The rule of claim preclusion prevents reassertion of the same claim even though additional or different evidence or legal theories might be advanced in support of it. In applying the rule of claim preclusion, the critical question is how broad a definition to give to the term same claim or cause of action. The broader the definition, the broader the scope of preclusion. . . .

"The related doctrines of claim preclusion and issue preclusion as stated in our cases may seem to imply a meaningful distinction between claim and issue for purposes of determining what matters are precluded by a former adjudication. If so understood, sound principles of finality are made to depend on the terminology used to express them. The concepts of issue preclusion and claim preclusion are simply related ideas on a continuum, differentiated, perhaps by their breadth, and express no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest. . . . The process of defining the claim . . . is thus aimed at defining the matters that both might and should have been advanced in the first litigation. . . . The decision whether to apply res judicata to matters not actually litigated should be made in light of the policies underlying that doctrine—the competing interests of the defendant and of the courts in bringing litigation to a close and of the plaintiff in the vindication of a just claim. . . .

"Res judicata, as a judicial doctrine . . . should be applied as necessary to promote its underlying purposes. These purposes are generally identified as being (1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which undermine the integrity of the judicial system; and (3) to provide repose by preventing a person from being [harassed] by vexatious litigation. . . . But by the same token, the internal needs of the judicial system do not outweigh its essential function in providing litigants a legal forum to redress their grievances. Courts exist for the purpose of trying lawsuits. If the courts are too busy to decide cases fairly and on the merits, something is wrong. . . . The judicial doctrines of res judicata and collateral estoppel are based on the public policy that a party should not be able to relitigate a

matter which it already has had an opportunity to litigate. . . . Stability in judgments grants to parties and others the certainty in the management of their affairs which results when a controversy is finally laid to rest. The doctrines of preclusion, however, should be flexible and must give way when their mechanical application would frustrate other social policies based on values equally or more important than the convenience afforded by finality in legal controversies. . . .

"We review the doctrine of res judicata to emphasize that its purposes must inform the decision to foreclose future litigation. The conservation of judicial resources is of paramount importance as our trial dockets are deluged with new cases daily. We further emphasize that where a party has fully and fairly litigated his claims, he may be barred from future actions on matters not raised in the prior proceeding. But the scope of matters precluded necessarily depends on what has occurred in the former adjudication." (Citations omitted; internal quotation marks omitted.) *State* v. *Ellis*, 197 Conn. 436, 463–67, 497 A.2d 974 (1985), on appeal after remand sub nom. *State* v. *Paradise*, 213 Conn. 388, 567 A.2d 1221 (1990), overruled in part by *State* v. *Skakel*, 276 Conn. 633, 693, 888 A.2d 985, cert. denied, 549 U.S. 1030, 127 S. Ct. 578, 166 L. Ed. 2d 428 (2006).

The plaintiff, in December, 2008, filed an action in the New York Supreme Court against Stephen Bruno, Dalton, Boston Financial and Mintz Levin, stating that the action arose "out of a conspiracy between . . . Stephen Bruno . . . his former employer [Dalton], the company holding a majority interest in his former employer [Boston Financial] and his attorneys [Mintz Levin], to devise, orchestrate and execute a fraudulent conveyance scheme with the actual intent to hinder, delay and/or defraud the [p]laintiff from receiving an equitable distribution of interests [Stephen] Bruno held in [Dalton]." Applying Connecticut law, the New York

Supreme Court decided that the plaintiff's complaint was barred by the doctrine of collateral estoppel on the basis of the dissolution court's finding that there had been no fraud in Stephen Bruno's termination of employment from, and settlement agreement with, Dalton. The Appellate Division of the New York Supreme Court affirmed that judgment. See *Bruno* v. *Bruno*, supra, 83 App. Div. 3d 165. In the plaintiff's present action, she also alleges that this "action arises out of a conspiracy between . . . Stephen Bruno . . . his former employer [Dalton], the company holding a majority interest in his former employer [Boston Financial] and his attorneys [Mintz Levin], to devise, orchestrate and execute a fraudulent conveyance scheme with the actual intent to hinder, delay and/or defraud the [p]laintiff from receiving an equitable distribution of interests [Stephen] Bruno held in [Dalton]."

Although the New York action was brought against Stephen Bruno, Dalton, Boston Financial and Mintz Levin, and the current action is brought against Geller, Dalton and Boston Financial, both actions are based on the same underlying allegations of fraud in Dalton's termination of, and settlement agreement with, Stephen Bruno. Furthermore, although Geller was not named as a party in the New York action, he is named in the present action in his official capacity as the co-president and chief executive officer of Dalton. Because both actions are based on the plaintiff's allegations of fraud in Dalton's termination of and settlement agreement with Stephen Bruno, and the New York court determined that such allegations, because of the decision of the dissolution court, were barred by the doctrine of collateral estoppel and rendered judgment thereon against the plaintiff, we conclude that the plaintiff's current action is barred by the doctrine of res judicata. See *Lighthouse Landings, Inc.* v. *Connecticut Light & Power Co.*, 300 Conn. 325, 352–53, 15 A.3d 601 (2011)

(civil suit alleging misrepresentation and unfair trade practices claims barred by res judicata because determination of these claims would involve relitigating subject matter of earlier declaratory judgment action involving defendant's alleged improper termination of lease).

During oral argument before this court, the plaintiff argued that res judicata did not apply, in part, because the New York judgment was not a judgment on the merits, the court having wrongly decided that collateral estoppel applied without giving her the benefit of a hearing. We disagree. "Judgments based on the following reasons are not rendered on the merits: want of jurisdiction; pre-maturity; failure to prosecute; unavailable or inappropriate relief or remedy; lack of standing." (Internal quotation marks omitted.) *Legassey* v. *Shulansky*, 28 Conn. App. 653, 658, 611 A.2d 930 (1992). Other final judgments, however, whether rendered by dismissal, default or otherwise, generally are considered judgments on the merits for purposes of res judicata. See id., 656 ("the dismissal of the first applications [to quash subpoenas] was a judgment on the merits, and, therefore, the plaintiffs' second applications were barred by the doctrine of res judicata"); *Tucker* v. *Crikelair*, 4 Conn. App. 150, 151, 493 A.2d 247 (relying on holding of United States Court of Appeals for Second Circuit, in *PRC Harris, Inc.* v. *Boeing Co.*, 700 F.2d 894 [2d Cir.], cert. denied, 464 U.S. 936, 104 S. Ct. 344, 78 L. Ed. 2d 311 [1983], that dismissal of action in United States District Court for District of Washington on ground that action was time barred was adjudication on merits so as to preclude, by res judicata, relitigation of same claim in subsequent action in New York District Court), cert. denied, 196 Conn. 813, 494 A.2d 908 (1985); see also *Slattery* v. *Maykut*, 176 Conn. 147, 157, 405 A.2d 76 (1978) (holding that default judgment is considered judgment on merits, which has res judicata effect).

"A judgment on the merits is one which is based on legal rights as distinguished from mere matters of practice, procedure, jurisdiction or form. . . . A decision with respect to the rights and liabilities of the parties is on the merits where it is based on the ultimate fact or state of facts disclosed by the pleadings or evidence, or both, and on which the right of recovery depends." (Citations omitted; internal quotation marks omitted.) *Rosenfield* v. *Cymbala*, 43 Conn. App. 83, 91–92, 681 A.2d 999 (1996) (holding that foreclosure action barred by res judicata because judgment of dismissal rendered in prior action, based on court's determination that plaintiff could not recover as matter of law, was judgment on merits). Accordingly, we conclude that the judgment of the New York court, affirmed on appeal, was a judgment on the merits and that, even if the plaintiff were correct in arguing that the matter was decided wrongly, such judgment, nevertheless, precludes her from alleging the same claims and raising the same issues for a third time in the pending matter.

"A judgment dismissing an action on the merits is a bar to any further suit on the same cause of action, between the same parties. . . . [Furthermore even if] . . . the judgment in the first action was manifestly erroneous, because it appeared from the record before the court that the judgment in that action was based upon an erroneous construction of the complaint, [it would] not render it invalid or ineffective. Though erroneous, it continue[s] in force [unless] set aside by writ of error or appeal, or other proper proceedings, and the Superior Court in deciding the second action ha[s] no power to decide that the first judgment was erroneous." (Citations omitted; internal quotation marks omitted.) *Rogers* v. *Hendrick*, 85 Conn. 271, 276, 82 A. 590 (1912). "Unless, and until, it is corrected, modified, reversed, annulled, vacated, or set aside on appeal or in some other timely and appropriate proceeding, a final

judgment on the merits which has been rendered by a court having jurisdiction of the parties and the subject matter, and which is not void, is conclusive as to matters put in issue and actually determined in the suit, when they come into controversy again in subsequent litigation between the same parties or their privies, even though it is irregular or erroneous. Under the doctrines of res judicata and collateral estoppel, a later court cannot alter the results of a prior final judgment even if that judgment is wrong . . . ." 50 C.J.S. 405, Judgments § 1047 (2009); see also U.S. Const., art. IV, § 1 ("[f]ull Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State"); *Luna* v. *Dobson,* 97 N.Y.2d 178, 182–83, 763 N.E.2d 1146, 738 N.Y.S.2d 5 (2001) (full faith and credit clause establishes rule of evidence requiring recognition of prior out-of-state judgment, giving it res judicata effect, and, thus, avoiding relitigation of issues in one state that already have been decided in another state).

The plaintiff also argues that there is no identity of the parties, thereby making res judicata inapplicable. We disagree that complete mutuality is necessary under these circumstances. "Under the doctrine of res judicata, a final judgment, when rendered on the merits, is an absolute bar to a subsequent action, between the same parties or those in privity with them, upon the same claim." (Internal quotation marks omitted.) *Dowling* v. *Finley Associates, Inc.,* 248 Conn. 364, 373, 727 A.2d 1245 (1999). The following useful explanation is set forth in an annotation titled, "Mutuality of Estoppel as Prerequisite of Availability of Doctrine of Collateral Estoppel to a Stranger to the Judgment," 31 A.L.R.3d 1044, 1068 (1970): "In *Pat Perusse Realty Co.* v. *Lingo* [249 Md. 33, 238 A.2d 100 (1968)], the court, in reliance upon the 'early leading' decision of a Delaware trial court in *Coca-Cola Co.* v. *Pepsi-Cola Co.* [36 Del. 124,

172 A. 260 (1934)], pointed out that cases in which there is a nonmutuality situation must be subdivided, for two distinct principles are involved: (1) where the plea of res judicata is raised by a party to the prior suit against one who was not such a party, and (2) where the plea of res judicata is raised by one not a party to the prior suit against one who was such a party. As regards the first class of cases, it was reiterated that the requirement of mutuality should be retained, since no person should be deprived of his property without due process of law; that the person against whom the plea is made was not a party to the former proceeding 'and there is no liability over either way with any person that was a party to the first suit'; and that a holding that a judgment against the first would be res judicata as to the second could be sustained on no sound principles. On the other hand, a very different situation arises, said the court, in the case where res judicata is pleaded by one not a party to the first suit against one who was such a party. As to this situation, the court stated that, assuming the identity of the issues, a plaintiff who deliberately selects his forum and there unsuccessfully presents his proofs is bound by such adverse judgment in a second suit involving all the identity issues already decided; that the requirement of mutuality must yield to public policy; and that to hold otherwise would be to allow repeated litigation of identical questions expressly adjudicated, and to allow a litigant who has lost on a question of fact to reopen and retry all the old issues each time he can obtain a new adversary not in privity with his former one." See also *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 231, 828 A.2d 64 (2003), quoting *Gribben* v. *Lucky Star Ranch Corp.*, 623 F. Sup. 952, 960 (W.D. Mo. 1985) ("[a] privity relationship for res judicata purposes exists when the interests of a [nonparty] are represented by a party in the former action" [internal quotation marks omitted]). We find this reasoning persuasive and applicable to the present case.

The plaintiff chose her first forum, the dissolution court, to raise and pursue her claims of fraud against Stephen Bruno. The court rejected her claims of fraud. Thereafter, she chose her second forum, the New York Supreme Court, added defendants in addition to Stephen Bruno and raised claims of fraud that were based on the same facts that had been alleged and found unsubstantiated by the dissolution court. When the New York Supreme Court issued a final judgment, adverse to the plaintiff, which judgment was affirmed on appeal, and the New York Court of Appeals denied further review, the plaintiff's claims regarding fraud in Dalton's discharge of and settlement agreement with Stephen Bruno were finally resolved. "Claim preclusion forecloses the possibility of recovery regardless of new or additional facts or issues which may be asserted [in a subsequent suit]." A. Vestal, "Extent of Claim Preclusion," 54 Iowa L. Rev. 1, 4 (1968).[6] "[I]f the two suits turn on an actor in a group of operative facts and the plaintiff has been unable to establish the requisite culpability for recovery, then a second defendant, whose liability turns on the culpability of the same actor, should be able to rely on the first judgment as preclusive. This position would seem to serve the interests of society and the individuals being sued, without prejudicing unduly the ability of a plaintiff to recover for a wrong done. One bite of the apple is all that society need give." Id., 12.

The plaintiff, in her third attempt to prove the previously rejected claims of fraud, cannot simply cite in a new defendant and put new labels on her causes of

---

[6] "Professor [Allan D.] Vestal was a well-respected authority on issue preclusion principles. See Ruth Bader Ginsburg, The Work of Professor Allan Delker Vestal, 70 Iowa L. Rev. 13 (1984) (presenting a survey of state and federal authorities citing articles and publications written by Professor Vestal). He served as an Adviser throughout preparation of the Restatement (Second) of Judgments." *Dettmann* v. *Kruckenberg*, 613 N.W.2d 238, 245 n.3 (Iowa 2000).

action to get around the New York judgment, when it is quite clear that the allegations of her complaint are based on the same underlying claims of fraud in Dalton's discharge of and settlement agreement with Stephen Bruno. See *LaSalla* v. *Doctor's Associates, Inc.*, 278 Conn. 578, 590, 898 A.2d 803 (2006) ("claim preclusion prevents the pursuit of any claims relating to the cause of action which were actually made or might have been made" [internal quotation marks omitted]); *State* v. *Ellis*, supra, 197 Conn. 463 ("[a] judgment is final not only as to every matter which was offered to sustain the claim, but also as to any other admissible matter which might have been offered for that purpose" [internal quotation marks omitted]). On the basis of the foregoing analysis, we conclude that the plaintiff's complaint is barred by the doctrine of res judicata.

III

The plaintiff also claims that the court violated her procedural and substantive due process and "equal treatment" rights under article first, §§ 10 and 20, of the constitution of Connecticut and the fourteenth amendment to the United States constitution by "disregard[ing] fundamental black letter law [and] . . . deny-[ing] [the plaintiff] any opportunity to ever be heard on the present claims and issues."

After the court rendered summary judgment in favor of the defendants in this case, the plaintiff filed a motion for reargument and a motion to set aside the judgment, both of which were denied by the court. A review of the record, including the plaintiff's postjudgment motions, reveals that no constitutional arguments related to procedural or substantive due process or equal protection rights under article first, §§ 10 and 20, of the constitution of Connecticut or the fourteenth amendment to the United States constitution raised before the trial court. Thus, this issue was not preserved for appellate

review, and the plaintiff has not requested that we review the issue pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or the plain error doctrine. "When a party raises a claim for the first time on appeal, our review of the claim is limited to review under either the plain error doctrine as provided by Practice Book § 60-5, or the doctrine set forth in . . . *Golding* . . . ." (Citation omitted; internal quotation marks omitted.) *Irizarry* v. *Irizarry*, 90 Conn. App. 340, 343, 876 A.2d 593 (2005). As this court has held previously, "it is not appropriate to engage in a level of review that is not requested." (Internal quotation marks omitted.) Id. Accordingly, we decline to review this claim.

The judgment is affirmed.

In this opinion the other judges concurred.