[923 NYS2d 23]

Lisa Bruno, Appellant-Respondent, v Stephen Bruno et al., Respondents-Appellants, and Dalton Greiner Hartman Maher & Co., LLC, et al., Respondents.

First Department, April 12, 2011

## APPEARANCES OF COUNSEL

*Brown & Whalen, P.C.*, New York City (*Rodney A. Brown* and *Melissa Alcantara* of counsel), for appellant-respondent.

*Wachtel & Masyr LLP*, New York City (*Evan S. Weintraub* and *George E. Patterson, Jr.* of counsel), for Stephen Bruno, respondent-appellant.

*Matalon Shweky Elman PLLC*, New York City (*Howard I. Elman* and *Yosef Rothstein* of counsel), for Mintz Levin Cohn Ferris Glovsky and Popeo, P.C., respondent-appellant.

*Hughes Hubbard & Reed LLP*, New York City (*Kenneth E. Lee* of counsel), for respondents.

## OPINION OF THE COURT

ACOSTA, J.

This action requires us to apply the doctrine of collateral estoppel to a judicial determination of a sister state. Specifically, we consider the preclusive effect of a determination in a contempt motion in the context of a divorce proceeding in Connecticut, which expressly found that the husband and his former employer did not engage in a fraudulent scheme to deprive the wife of assets in equitable distribution, on a New York action subsequently commenced by the wife alleging the same fraud. Applying the well-established principles of collateral estoppel, we hold that the wife cannot maintain the New York action.

Defendant Stephen Bruno and plaintiff Lisa Bruno were married in 1987. On December 12, 2005, Stephen commenced a divorce action against Lisa in the Superior Court of Connecticut. At the time the action was filed, Stephen was the co-president and a member of Dalton Greiner Hartman Maher & Co., LLC (DGHM), which is managed by and 80% owned by defendant Boston Private Financial Holdings, Inc. (BPFH). While employed at DGHM, Stephen acquired equity interests in DGHM as well as in nonparty 1100 Fifth Avenue Partners, Inc. (FAP).

In October 2006, Stephen was terminated from DGHM for cause on the ground that he manipulated his performance attribution number in order to receive a more favorable bonus. Stephen contested the termination, but, rather than litigate the issue, he retained the law firm of Mintz Levin to negotiate the

terms of his departure. Pursuant to these negotiations, Stephen entered into a settlement agreement with DGHM, BPFH, and FAP whereby, among other things, Stephen's termination would be treated as one "for cause," and as a result, would forfeit certain equity interests in DGHM and FAP. In return, Stephen would be released from certain noncompete provisions, and DGHM would not publicly disclose the reasons for his termination.

By motion dated February 12, 2007, Lisa moved in the Connecticut action to hold Stephen in contempt of that court's order. Specifically, Lisa alleged that Stephen violated "Automatic Order #1," which prohibited the parties from disposing of any property without the consent of the other or approval by the court. According to Lisa, Stephen was not actually terminated for cause, did not actually forfeit his equity interests, would ultimately receive monetary consideration for his equity interests, and devised a fraudulent scheme with DGHM, BPFH and Mintz Levin in order to deprive her of assets that would otherwise have been available to her in equitable distribution.

In connection with her motion, Lisa subpoenaed and received documents from DGHM and Mintz Levin and deposed Stephen, DGHM's chief executive officer, Bruce Geller, and an attorney from Mintz Levin. After several months of discovery, the Connecticut court held an evidentiary hearing over the course of five days. During the hearing, both Stephen and Geller testified regarding the settlement agreement and Stephen's termination.

On March 17, 2008, the Connecticut court denied Lisa's contempt motion. The court found that "the reason advanced by [DGHM] for [Stephen's] termination would have constituted valid grounds for the termination of [Stephen] for cause if a settlement agreement had not been arrived at between the parties and would have constituted willful or gross misconduct on the part of [Stephen]." (*Bruno v Bruno*, 2008 WL 907512, *7, 2008 Conn Super LEXIS 642, *20 [2008].) Moreover, the court found:

> "[A] fraud scheme has not occurred and . . . none of the allegations of a fraud scheme have been proven. The plaintiff will not receive any money from DGHM or BPFH other than is disclosed in the separation agreement . . . Further, no person or entity will be receiving anything of value on behalf of [Stephen] as the result of his termination." (2008 WL 907512, *12, 2008 Conn Super LEXIS 642, *32-33.)

The court further determined that Lisa failed to present credible evidence of any act of bad faith by DGHM or Mintz Levin to substantiate her claim that Mintz Levin was retained to "mastermind" the fraudulent conveyance of marital property and help negotiate DGHM's participation in the fraud and subsequent cover up. (2008 WL 907512, *12, 2008 Conn Super LEXIS 642, *33-34.)

Thereafter, Lisa filed this action in the Supreme Court of New York, alleging that there was a conspiracy between Stephen and the other defendants to devise and execute a "fraudulent conveyance scheme" with the intent of hindering, delaying, or defrauding plaintiff from receiving equitable distribution of Stephen's equity interests in DGHM. In her complaint, Lisa repeated all of the allegations that she made in the Connecticut action, including that Stephen was not actually terminated for cause, that he did not actually forfeit his equity interests, and that he conveyed his interests to deny plaintiff her equitable share.

In February 2009, the defendants each moved to dismiss the complaint on the ground that the claims are collaterally estopped by the decision in the Connecticut action. Stephen and Mintz Levin also sought sanctions. The motion court dismissed the complaint and denied the motion for sanctions. We now affirm.

The motion court properly noted that New York courts apply the law of the rendering jurisdiction to determine the preclusive effect of the decisions of sister states (*see e.g. Schultz v Boy Scouts of Am.*, 65 NY2d 189, 204 [1985]). Under Connecticut law, collateral estoppel precludes a party from relitigating an issue that has been "fully and fairly litigated" in a prior suit (*Aetna Cas. & Sur. Co. v Jones*, 220 Conn 285, 296, 596 A2d 414, 421 [1991] [internal quotation marks omitted]). Application of the doctrine is appropriate where, in a prior action between the same parties or those in privity with them, the issues and facts were actually litigated and necessarily determined (*see Efthimiou v Smith*, 268 Conn 499, 506, 846 A2d 222, 227 [2004]). "An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . An issue is *necessarily determined* if, in the absence of a determination of the issue, the judgment could not have been validly rendered" (*Cumberland Farms, Inc. v Town of Groton*, 262 Conn 45, 58 n 17, 808 A2d 1107, 1116 n 17 [2002], quoting *Dowling v Finley Assoc., Inc.*, 248 Conn 364, 374, 727 A2d 1245, 1251 [1999]).

■ Applying these principles, the motion court correctly found that plaintiff is collaterally estopped by the determination in the Connecticut action from asserting her claims in this action. The main issues raised in this action, relating to the central allegation that defendants conspired to create a fraud scheme to deprive plaintiff of assets in equitable distribution, were actually litigated and necessarily determined in the Connecticut action. Indeed, the Connecticut court was required to consider those allegations in order to determine whether Stephen had willfully disobeyed one of its orders.

■ Lisa's argument that the motion court erred in giving preclusive effect to the Connecticut proceeding since it did not involve the same parties in this action or those in privity with them, is unavailing. The motion court correctly noted that "collateral estoppel precludes a party from relitigating issues and facts actually and necessarily determined in an earlier proceeding between the same parties or those in privity with them upon a different claim." Although only Stephen was a party to the Connecticut action, the Connecticut court specifically found that there was no evidence that the other defendants in this case committed any acts in bad faith or were part of a fraudulent scheme. Morever, under Connecticut law mutuality of parties in a subsequent action is not necessary to invoke collateral estoppel (*see Aetna Cas. & Sur. Co. v Jones*, 220 Conn at 302, 596 A2d at 424 ["To allow a party who has fully and fairly litigated an issue at a prior trial to avoid the force of a ruling against him simply because he later finds himself faced by a different opponent is inappropriate and unnecessary"]; *see also Efthimiou,* 268 Conn at 507, 846 A2d at 227-228 [when the liability of a defendant in an action is derivative of the liability of a defendant in a prior action, and the liability of the prior defendant was "properly raised in the pleadings or otherwise, submitted for determination, and in fact determined" and "that determination was essential to the judgment in the companion case, and it remains unchallenged," the plaintiff in the present action is collaterally estopped from relitigating that issue in the present action]). Similarly here, the liability of the remaining defendants is derivative of Stephen's liability, and since Stephen was found not to have engaged in a fraud scheme with DGHM, BPFH and Mintz Levin in the Connecticut action, Lisa is collaterally estopped from bringing her claims against the remaining defendants in the present action.

■ Nor did, as plaintiff urges, the motion court err by conflating the doctrines of res judicata and collateral estoppel and

by applying res judicata to this case. Citing to *Delahunty v Massachusetts Mut. Life Ins. Co.* (236 Conn 582, 674 A2d 1290 [1996]), plaintiff argues that the motion court misapplied Connecticut law as the doctrine of res judicata does not bar the litigation of tort claims that might have been made in a prior marital dissolution action. Initially, the motion court specifically noted that while the doctrines of res judicata and collateral estoppel are related, they are distinct. The court then went on to apply the doctrine of collateral estoppel to this action. In any event, in *Weiss v Weiss* (297 Conn 446, 464, 998 A2d 766, 777-778 [2010]), the Connecticut Supreme Court clarified that its holding in *Delahunty* was that tort actions are not required to be litigated in a divorce action, but noted that those issues that are litigated in a divorce proceeding generally are precluded from subsequently being relitigated.

█ Plaintiff also relies on *Delahunty* to argue that Connecticut public policy prohibits the application of "preclusion principles" to divorce proceedings, and that the divorce proceeding did not provide her a fair and adequate forum to litigate. Her argument is based on the power of New York Supreme Court to award legal, rather than only equitable relief. Thus, according to plaintiff, collateral estoppel is "inapplicable to a marital dissolution proceeding because of the unique circumstances and jurisdictional limitations such a proceeding presents." These arguments are flawed and are a misreading of Connecticut law.

In *Weiss* (297 Conn 446, 998 A2d 766 [2010]), during divorce proceedings, a dispute arose about the meaning of an agreement executed by the parties to divide their law practice. Almost two years after the dispute was resolved, the wife filed a complaint alleging breach of contract and breach of fiduciary duty claims against the husband in connection with the same agreement. The Connecticut Supreme Court rejected the wife's argument that collateral estoppel did not bar a subsequent proceeding to the divorce action involving claims founded in tort or contract, holding, as noted, that tort actions do not *have to be* litigated in the marital dissolution proceedings, but when a claim *was actually litigated* in the divorce proceedings, that decision has preclusive effects.

For this Court to reach a different result would be to go against the significant public policy considerations of collateral estoppel. As the Connecticut Supreme Court noted in *Cumberland*, the decision to apply collateral estoppel should be made

upon a consideration of the doctrine's underlying purpose, namely, "(1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which undermine the integrity of the judicial system; and (3) to provide repose" (262 Conn at 59, 808 A2d at 1117, quoting *Isaac v Truck Serv., Inc.*, 253 Conn 416, 422, 752 A2d 509, 513 [2000]).

■ Plaintiff also asserts that the motion court misconstrued the scope of her contempt motion inasmuch as that motion concerned only whether Stephen should be held in contempt for willfully violating the Connecticut court's order. However, in order for the Connecticut court to determine whether Stephen had willfully violated the order, it was necessary to determine whether he had in fact been involved in a fraud scheme, an issue which was actually litigated and necessarily determined. Thus, plaintiff's argument is unavailing.

Finally, the motion court properly exercised its discretion in denying the motions by Mintz Levin and Stephen for sanctions against plaintiff. The conduct in the present action does not rise to the level of conduct New York courts find sanctionable (*cf. Romeo v Romeo*, 225 AD2d 753 [1996]; *Matter of Rosenhain*, 222 AD2d 745 [1995], *lv dismissed* 87 NY2d 1053 [1996]).

Accordingly, the order of the Supreme Court, New York County (Melvin L. Schweitzer, J.), entered September 1, 2009, which granted the motions of DGHM and BPFH to dismiss the complaint against them on collateral estoppel grounds, granted that portion of defendants Stephen Bruno's and Mintz Levin Cohn Ferris Glovsky and Popeo, P.C.'s motions seeking to dismiss the complaint as against them on collateral estoppel grounds and denied that portion of the motions seeking sanctions, should be affirmed, with costs.

SAXE, J.P., FRIEDMAN, CATTERSON and RICHTER, JJ., concur.

Order, Supreme Court, New York County, entered September 1, 2009, affirmed, with costs.