*261 OPINION OF THE COURT
Melvin L. Schweitzer, J.
In this action to collect under an excess insurance policy, defendant RSUI Indemnity Company moves, pursuant to CPLR 3211 (a) (1) and (7), for an order dismissing the complaint.
Background
Plaintiff Forest Laboratories, Inc. was insured under an excess policy of insurance for directors and officers liability, issued by RSUI for the period May 22, 2004 to May 22, 2005, with limits of $10 million. (Notice of motion, exhibit 3.) The RSUI policy is the last layer of coverage atop a tower of $70 million in underlying insurance. The $70 million in underlying coverage was procured from seven other insurance companies, all carrying limits of $10 million, made up of one primary policy and six excess policies. The insurance company directly below RSUI was defendant Old Republic Insurance Company. The excess insurer below Old Republic was Arch Insurance Company.
Plaintiff was sued in federal court, in the Southern District of New York, in several actions alleging securities fraud, together entitled In Re Forest Labs., Inc. Sec. Litig. (US Dist Ct, SD NY, No. 05-CV-2827-RMB, Berman, J.). The securities action was settled for $65 million, which was paid by plaintiff. Plaintiff claims that considerable unpaid extra claims and defense costs exist, adding several millions of dollars over the $65 million settlement amount.
In its original complaint, plaintiff claims to have eventually settled its claim with the primary insurer, which paid plaintiff’s defense costs, as well as with the first four excess insurance companies, for the limits of their policies. Plaintiff then sought, in this action, to recover the remainder allegedly due from Arch, Old Republic and RSUI, the sixth, seventh and eighth layers of insurance, respectively. Plaintiff settled with Arch and Old Republic, and served a second amended complaint upon RSUI. (Notice of motion, exhibit 4.)
In the second amended complaint, plaintiff maintains that RSUI, as the last layer of excess insurance, is obligated to pay plaintiff the final $10 million in defense and indemnity costs.[1] Plaintiff maintains that an “attachment point” was reached *262 when the policy limits of the Old Republic policy were satisfied. (Complaint 11 42.)
Apparently, plaintiff did not settle with Arch and Old Republic for the total amount of each insurer’s coverages, but negotiated settlements in which each insurer paid a part of its $10 million obligation, and plaintiff “filled in the gaps” to reach the $10 million mark for each policy. In the second amended complaint, plaintiff recites that the “attachment point” “has been reached with respect to the RSUI policy because either the Federal policy [primary policy], the exhausted Excess Insurance Policies or [plaintiff] have paid a total of approximately $84 Million toward the defense and settlement of the Underlying Actions.”[2] (Id. If 43.)
It is RSUI’s position that, as a result of the fact that neither Arch nor Old Republic paid the entirety of their policy limits to plaintiff, in that plaintiff “filled in the gaps” in reaching those policy limits, plaintiff never actually reached the limits of the underlying policies, and, as a result, no “attachment point” was ever reached with regard to the RSUI policy. If this is so, RSUI insists that plaintiff is owed nothing from RSUI.
Arguments
The RSUI policy is a “follow form” policy by virtue of language in the policy which states that
“[t]his policy shall provide the Insured with insurance during the Policy Period excess of all applicable Underlying Insurance. Except as specifically set forth in the provisions of this policy, the insurance afforded hereunder shall apply in conformance with the provisions of the applicable Primary Policy or, to the extent coverage is further limited or restricted thereby, any applicable Underlying Insurance. In no event shall this policy grant broader coverage than would be provided by the most restrictive policy included in the Underlying Insurance.” (RSUI policy, § I.)
It is RSUI’s position that this court should rely on the language in the Old Republic policy with regard to RSUI’s obligation to pay plaintiff, due to exhaustion language in the Old Republic policy (notice of motion, exhibit 2) which reads: “[l]iability for any covered Loss on account of Claims first made *263 in each Policy Period shall attach to the Insurer only after the insurers of the Underlying Policies shall have paid in legal currency the full amount of the Underlying Limit for such Policy Period . . . .” (Id. § II.A [emphasis added].) Thus, RSUI argues that it need not pay plaintiff because payment under the underlying policies was not made in full by those insurers, as allegedly required under the Old Republic policy, but was partially paid by plaintiff “filling in the gaps.” As such, RSUI maintains that its policy was never reached.[3]
Plaintiff argues that the “follow form” language in RSUI’s policy only applies to questions of the scope of coverage of the policies, not to the exhaustion of policy limits, so that Old Republic’s exhaustion language does not apply. Plaintiff then compares the RSUI exhaustion language, which reads: “[i]t is agreed that the Insurer shall not pay any amount until all retentions and Underlying Limits of Liability have actually been paid.” (RSUI policy, § III [emphasis in italics added].) The RSUI policy actually goes on to say:
“SECTION IV - LIMIT OF LIABILITY
“A. Subject to the Limit of Liability set forth in item 3. (A) of the Declarations Page, it is agreed that in the event and only in the event of a reduction or exhaustion of the Underlying Limits of Liability, solely as a result of actual payment of a Covered Claim pursuant to the terms and conditions of the Underlying Insurance thereunder, this policy shall:
“1. In the event of reduction, pay excess of the reduced Underlying Limits of Liability.” (Emphasis in italics added.)
Plaintiff, applying New York law, would have this court find that the RSUI exhaustion language is ambiguous about who is to “actually pay” the limits of the underlying policies, and that that ambiguity should be read against RSUI, so as to allow plaintiff to reach the RSUI policy when the limits of the underlying policies were allegedly satisfied by settlements, which entailed a combination of payments made by the insurers and by plaintiff.
*264 In response to plaintiffs opposition, RSUI argues that, even if its own exhaustion language were to apply, it would still require denial of plaintiffs claim.[4]
Discussion
A. Motion to Dismiss
“On a motion to dismiss pursuant to CPLR 3211, we must accept as true the facts as alleged in the complaint and submissions in opposition to the motion, accord plaintiffs the benefit of every possible favorable inference and determine only whether the facts as alleged fit within any cognizable legal theory.” (Sokoloff v Harriman Estates Dev. Corp., 96 NY2d 409, 414 [2001]; see also Leon v Martinez, 84 NY2d 83 [1994].)
“ ‘Whether a plaintiff can ultimately establish its allegations is not part of the calculus in determining a motion to dismiss.’ ” (Ginsburg Dev. Cos., LLC v Carbone, 85 AD3d 1110, 1111 [2d Dept 2011], quoting EBC I, Inc. v Goldman, Sachs & Co., 5 NY3d 11, 19 [2005].) A motion brought pursuant to CPLR 3211 (a) (1) “may be granted where ‘documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law.’ ” (Held v Kaufman, 91 NY2d 425, 430-431 [1998], quoting Leon v Martinez, 84 NY2d at 88; Foster v Kovner, 44 AD3d 23, 28 [1st Dept 2007] [“(t)he documentary evidence must resolve all factual issues and dispose of the plaintiff’s claim as a matter of law”].)
B. Application of Follow Form Language
As RSUI’s and Old Republic’s exhaustion clauses differ, plaintiff argues that this court must first determine whether RSUI may rely on the Old Republic language, based on the application of the follow form language in RSUI’s own policy. Plaintiff points to the wording in the follow form clause which reiterates that it applies “to the extent that coverage is further limited” under any applicable insurance, and that RSUI’s policy will not provide “broader coverage” than the most restrictive policy in the excess insurance tower. (RSUI policy, § I.) Both references to “coverage” imply to plaintiff that the follow form language only applies to issues of “the scope of the risks insured against, not to other terms and conditions in the policy.” *265 (Plaintiff’s mem in opposition at 9.) Thus, under plaintiff’s reading of the RSUI policy, only the part of Old Republic’s policy referring to the scope of coverage would be carried into RSUI’s policy, and the exhaustion clause would not be involved.
Regardless of the foregoing, it is unnecessary for this court to decide whether RSUI’s follow form language applies to the issue of policy limit exhaustion, because it finds that the Old Republic exhaustion language is not “more restrictive” than RSUI’s exhaustion language, but that RSUI’s own policy language is sufficient to bar plaintiffs right to coverage under RSUI’s policy.
“As with the construction of contracts generally, ‘unambiguous provisions of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court.’ ” (Vigilant Ins. Co. v Bear Stearns Cos., Inc., 10 NY3d 170, 177 [2008], quoting White v Continental Cas. Co., 9 NY3d 264, 267 [2007].) Ambiguous provisions will be construed against the insurer who drafted the policy. (White v Continental Cas. Co., 9 NY3d 264 [2007], supra; Dean v Tower Ins. Co. of N.Y., 84 AD3d 499 [1st Dept 2011].)
Plaintiffs case is premised on the action Zeig v Massachusetts Bonding & Ins. Co. (23 F2d 665 [2d Cir 1928]). The court in Zeig was faced with an exhaustion clause which read:
“In consideration of the reduced premium charged for the policy to which this indorsement is attached, such policy is issued and accepted:
“1. As excess and not contributing insurance, and shall apply and cover only after all other insurance herein referred to shall have been exhausted in the payment of claims to the full amount of the expressed limits of such other insurance.” {Id. at 665.)
The Zeig court found this provision to be ambiguous, in that it did not specify that the limits of any underlying policies had to be paid by the insurance companies themselves, but suggested that payment by other parties (such as the insured) might suffice to exhaust those policies, and reach the excess carrier. The court opined that the exhaustion language only required that the claims be “settled and discharged,” which would include “the satisfaction of a claim by compromise, or in other ways.” {Id. at 666.) Significantly, the Zeig court mused that “[i]t is doubtless true that the parties could impose” a condition precedent to the excess carrier’s liability that the underlying policies be exhausted only by payment by the insurers themselves before liability attached to the excess carrier, but *266 that the policy in Zeig did not do so. (Id.) Plaintiff maintains that the exhaustion language in the RSUI policy is “functionally identical” to that in Zeig (plaintiffs mem of law at 5), and so is at least ambiguous, and should be construed against RSUI to allow plaintiff to reach the RSUI policy.
RSUI, in support of its claim that both the Old Republic policy, as well as its own, require exhaustion of the underlying insurance specifically by payment of losses made by the underlying insureds, cites several cases spanning several jurisdictions. Thus, in Comerica Inc. v Zurich Am. Ins. Co. (498 F Supp 2d 1019 [ED Mich 2007]), an excess insurance policy was only implicated “[i]n the event of the depletion of the limit(s) of liability of the ‘Underlying Insurance’ solely as a result of actual payment of loss thereunder by the applicable insurers.” (Id. at 1022.) In Qualcomm, Inc. v Certain Underwriters at Lloyd’s, London (161 Cal App 4th 184, 73 Cal Rptr 3d 770 [2008]), the language of the excess policy provided that “Underwriters shall be liable only after the insurers under each of the Underlying Policies . . . have paid or have been held liable to pay the full amount of the Underlying Limit of Liability.” (161 Cal App 4th at 189, 73 Cal Rptr 3d at 774.) Similarly, in Great Am. Ins. Co. v Bally Total Fitness Holding Corp. (2010 WL 2542191, 2010 US Dist LEXIS 61553 [ND Ill, June 22, 2010, No. 06 C 4554]), which concerned two excess policies, one clause stated that “ [i]t is expressly agreed that liability for any covered Loss shall attach to the Insurer only after the insurers of the Underlying Policies shall have paid, in the applicable legal currency, the full amount of the Underlying Limit . . . .” (2010 WL 2542191, *1, 2010 US Dist LEXIS 61553, *7.) The other exhaustion clause read that the excess policy became implicated “only after all Underlying Insurance has been exhausted by payment of the total underlying limit of insurance” “solely as a result of actual payment of loss or losses thereunder.” (2010 WL 2542191, *1, 2010 US Dist LEXIS 61553, *8; see also JPMorgan Chase & Co. v Indian Harbor Ins. Co., 31 Misc 3d 1240[A], 2011 NY Slip Op 51055[U] [Sup Ct, NY County 2011] [several variations of exhaustion language under Illinois law].)
These examples, along with the language employed by Old Republic, evince a clarity unfortunately missing from the RSUI policy language, but this does not render the RSUI policy language ambiguous, as in Zeig. The policy, section IVA., says that RSUI will pay upon the exhaustion of the underlying policies “solely as a result of actual payment of a Covered Claim *267 pursuant to the terms and conditions of the Underlying Insurance thereunder.” (Emphasis in italics added.) This court finds that this language is not ambiguous, and requires RSUI to pay only after the insurance has been paid under the provisions of the underlying policies (“terms and conditions of the Underlying Insurance thereunder” [emphasis in italics added]), which provisions necessarily include their term limits. Thus, RSUI pays only after the underlying insurers pay up to their policy limits. While RSUI could certainly have done a better job of drafting its policy, and has many examples of better language to which to refer to accomplish that, the language it chose still protects RSUI in the situation, as here, where the underlying insurers never paid their full policy amounts, due to settlements with plaintiff.
Conclusion
As a result of the foregoing, this court finds that RSUI’s policy was never reached, and that it is not liable to make up the difference between plaintiffs final costs and the amounts which plaintiff settled for with the underlying insurers. RSUI’s motion must be granted, and the complaint dismissed.
Accordingly, it is ordered that the motion brought by defendant RSUI Indemnity Company for an order dismissing the complaint is granted; and it is further ordered that the complaint is dismissed with costs and disbursements to RSUI Indemnity Company as taxed by the clerk of the court upon presentation of an appropriate bill of costs; and it is further ordered that the clerk is directed to enter judgment accordingly.

. In the second amended complaint, plaintiff claims that RSUI is also obligated to cover it for certain litigations other than the securities action, thus adding to the amount allegedly owed to it by RSUI.

. Plaintiff is apparently including actions other than the securities action in this statement.

. RSUI never specifically admits that the language in the Old Republic policy is more restrictive than its own, only that this court should look to that policy for guidance.

. This claim is raised initially merely in a footnote in RSUI’s original memorandum of law, but is fleshed out in its reply memorandum, in response to plaintiffs arguments. (Mem in support of motion at 8 n 4.)