Carrier Corp. v Allstate Ins. Co. (2020 NY Slip Op 05620)





Carrier Corp. v Allstate Ins. Co.


2020 NY Slip Op 05620


Decided on October 9, 2020


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on October 9, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., CENTRA, PERADOTTO, WINSLOW, AND BANNISTER, JJ.


396 CA 18-02292

[*1]CARRIER CORPORATION, ELLIOTT COMPANY, PLAINTIFFS-RESPONDENTS-APPELLANTS, ET AL., PLAINTIFF,
v
ALLSTATE INSURANCE COMPANY, SOLELY AS SUCCESSOR-IN-INTEREST TO NORTHBROOK EXCESS AND SURPLUS INSURANCE COMPANY, FORMERLY KNOWN AS NORTHBROOK INSURANCE COMPANY, ET AL., DEFENDANTS, AND FIREMAN'S FUND INSURANCE COMPANY, DEFENDANT-APPELLANT-RESPONDENT. 






RIVKIN RADLER LLP, UNIONDALE (MICHAEL A. KOTULA OF COUNSEL), AND HARRIS BEACH PLLC, ALBANY, FOR DEFENDANT-APPELLANT-RESPONDENT. 
COVINGTON & BURLING LLP, NEW YORK CITY (TERESA T. LEWI OF COUNSEL),
 


 Appeal and cross appeal from a judgment (denominated order) of the Supreme Court, Onondaga County (Anthony J. Paris, J.), entered November 21, 2018. The judgment granted five motions of plaintiffs Carrier Corporation and Elliott Company for partial summary judgment seeking specific declarations, and granted one motion and denied a second motion of defendant Fireman's Fund Insurance Company for partial summary judgment seeking specific declarations. 
It is hereby ORDERED that the judgment so appealed from is unanimously modified on the law by denying plaintiffs' motion for partial summary judgment seeking a declaration that, as a matter of law, injury-in-fact in an asbestos action occurs from the date of first claimed exposure through death or the filing of suit, thereby triggering each policy in effect from the date of first claimed exposure, and vacating that declaration, and as modified the judgment is affirmed without costs.
Memorandum: Plaintiffs Carrier Corporation (Carrier) and Elliott Company (Elliott) (collectively, plaintiffs), once-related corporate entities facing lawsuits claiming personal injuries arising from exposure to asbestos contained in their products, commenced this declaratory judgment and breach of contract action seeking, inter alia, declarations of the rights and obligations of the parties under liability insurance policies issued by various insurers, including fifth-layer excess policies issued by Fireman's Fund Insurance Company (defendant). Defendant appeals from a judgment insofar as it granted several of plaintiffs' motions for partial summary judgment and denied one of defendant's motions for partial summary judgment, and plaintiffs cross-appeal from the judgment insofar as it granted one of defendant's motions for partial summary judgment.
Addressing first defendant's appeal, defendant contends that Supreme Court erred in granting plaintiffs' motion for partial summary judgment declaring that, pursuant to a corporate reorganization agreement that spun off Elliott's predecessor business, Carrier transferred to Elliott the right to insurance coverage for liabilities arising out of business activities conducted by Elliott's predecessor business prior to that date. We reject that contention.
Initially, the court properly concluded that plaintiffs were not collaterally estopped with respect to the issue of the transfer of insurance rights to Elliott by prior court decisions rendered several years ago that denied motions for summary judgment on that issue. "A summary judgment motion presents a snapshot of the proof at a moment in time," and the denial of such a motion "establishes nothing except that summary judgment is not warranted at [that] time" (Siegel, NY Prac § 287 at 542-543 [6th ed 2018]) and "does not constitute an adjudication on the merits" (Jones v Town of Carroll, 158 AD3d 1325, 1327 [4th Dept 2018], lv dismissed 31 NY3d 1064 [2018]).
Further, we conclude that, following extensive discovery in the action before us, plaintiffs met their initial burden on the motion by establishing with extrinsic evidence in admissible form that, notwithstanding the ambiguity arising from the absence of an exhibit referred to in the reorganization agreement that ostensibly was to set forth the assets being transferred, the insurance rights were transferred to Elliott under the reorganization agreement (see Wolfson v Faraci Lange, LLP, 103 AD3d 1272, 1273 [4th Dept 2013]; Curiale v DR Ins. Co., 198 AD2d 52, 52-53 [1st Dept 1993]). In particular, plaintiffs established through the submission of, inter alia, documents prepared contemporaneously with the reorganization, the deposition testimony of employees involved in the reorganization, and evidence of post-reorganization conduct, that the parties to the reorganization agreement, consistent with the language therein, intended to, and did, transfer assets including insurance rights to Elliott (see Wolfson, 103 AD3d at 1273). Defendant failed to raise a triable issue of fact in opposition (see id.; Curiale, 198 AD2d at 52-53; see generally Zuckerman v City of New York, 49 NY2d 557, 562 [1980]).
Defendant also contends that the court erred in granting plaintiffs' motion for partial summary judgment declaring that, as a matter of law, injury-in-fact in an asbestos action occurs from the date of first claimed exposure through death or the filing of suit, thereby triggering each policy in effect from the date of first claimed exposure. The subject excess policies obligate defendant to indemnify the insured for its ultimate net loss—all sums actually paid or which the insured is legally obligated to pay for covered damages after deduction of all recoveries or salvage—in excess of an umbrella policy, which covers personal injuries caused by or arising out of an occurrence. Following form of the umbrella policy, the subject excess policies define an occurrence to include "a continuous or repeated exposure to conditions which unexpectedly and unintentionally result in personal injury . . . during the policy period," and define personal injury, in relevant part, as "bodily injury (including death at any time resulting therefrom), mental injury, mental anguish, shock, sickness, disease, [and] disability." The parties do not dispute that the applicable test in determining what event constitutes personal injury sufficient to trigger coverage is injury-in-fact, "which rests on when the injury, sickness, disease or disability actually began" (Continental Cas. Co. v Rapid-American Corp., 80 NY2d 640, 651 [1993]; see American Home Prods. Corp. v Liberty Mut. Ins. Co., 748 F2d 760, 764-765 [2d Cir 1984]). Rather, the parties dispute when an asbestos-related injury actually begins: plaintiffs assert that injury-in-fact occurs upon first exposure to asbestos, while defendant denies that assertion and instead maintains that injury-in-fact occurs only when a threshold level of asbestos fiber or particle burden is reached that overtakes the body's defense mechanisms. The court concluded, as a matter of law, that injury-in-fact occurs upon first exposure to asbestos. We agree with defendant for the reasons that follow that the court erred in that regard, and we therefore modify the judgment by denying the subject motion for partial summary judgment and vacating the declaration with respect to that motion.
Initially, the court improperly rejected defendant's contention that the coverage trigger issue under the injury-in-fact test presented a question of fact and, in doing so, incorrectly resolved the issue as a matter of law based on prior holdings in other cases. The court relied on inapposite cases where the parties stipulated or otherwise did not dispute that first exposure triggered coverage (see Pacific Empls. Ins. Co. v Troy Belting & Supply Co., 2015 WL 5708360, *4 [ND NY, Sept. 29, 2015, No. 1:11—CV—912]; United States Fid. & Guar. Co. v Treadwell Corp., 58 F Supp 2d 77, 95 [SD NY 1999]), or where the issue was not, in fact, specifically resolved on summary judgment and instead presented a factual question for resolution by the factfinder at trial based on medical evidence (see Stonewall Ins. Co. v Asbestos Claims Mgt. Corp., 73 F3d 1178, 1193 [2d Cir 1995], op mod on denial of reh 85 F3d 49 [2d Cir 1996]; American Home Prods. Corp., 748 F2d at 765; Fulton Boiler Works, Inc. v American Motorists Ins. Co., 828 F Supp 2d 481, 489 [ND NY 2011], citing Stonewall Ins. Co., 73 F3d at 1194, 1196-1197; In re Viking Pump, Inc., 148 A3d 633, 684 [Del 2016]; see also Borel v Fibreboard [*2]Paper Prods. Corp., 493 F2d 1076, 1083 [5th Cir 1973], cert denied 419 US 869 [1974]).
Next, to the extent that the court resolved the subject motion for partial summary judgment upon its consideration of the parties' submissions, we likewise conclude that the court erred in granting the motion. Even assuming, arguendo, that plaintiffs met their initial burden on the motion by submitting evidence in admissible form that asbestos-related injury actually begins upon first exposure, we conclude that defendant raised a triable issue of fact in opposition (see generally Zuckerman, 49 NY2d at 562). In particular, defendant submitted the affidavits of two medical experts contradicting the claim that damage from asbestos occurs immediately after initial exposure and averring instead that harm occurs only when a threshold level of asbestos fiber or particle burden is reached that overtakes the body's defense mechanisms. Plaintiffs' assertion that the opinions of defendant's experts are inconsistent with older scholarly publications authored by those experts, and with their prior testimony in another case, raised an issue of credibility, which the court improperly resolved on the motion for partial summary judgment by discounting the experts' affidavits on that basis (see Ferrante v American Lung Assn., 90 NY2d 623, 631 [1997]; Rew v County of Niagara, 115 AD3d 1316, 1318 [4th Dept 2014]).
Plaintiffs nonetheless contend, as a properly raised alternative ground for affirmance (see Parochial Bus Sys. v Board of Educ. of City of N.Y., 60 NY2d 539, 545-546 [1983]), that defendant is collaterally estopped from contending that personal injury does not occur upon first exposure to asbestos because defendant was a party to a case in California in which that issue was litigated and decided against multiple insurers, including defendant (see Armstrong World Indus., Inc. v Aetna Cas. & Sur. Co., 45 Cal App 4th 1 [Cal Ct App 1996]). Upon applying the law of the rendering jurisdiction to determine the preclusive effect of the decision in the California case (see Schultz v Boy Scouts of Am., 65 NY2d 189, 204 [1985]; Bruno v Bruno, 83 AD3d 165, 169 [1st Dept 2011], lv denied 18 NY3d 805 [2012], rearg denied 19 NY3d 831 [2012]), we conclude that collateral estoppel is inapplicable to the coverage trigger issue here. Under California law, "where[, as here,] the previous decision rests on a 'different factual and legal foundation' than the issue sought to be adjudicated in the case at bar, collateral estoppel effect should be denied" (Wimsatt v Beverly Hills Weight Loss Clinics Intl., Inc., 32 Cal App 4th 1511, 1517 [Cal Ct App 1995]; see United States Golf Assn. v Arroyo Software Corp., 69 Cal App 4th 607, 616 [Cal Ct App 1999]). The issue in the case at bar is not identical to that litigated in the California case because, among other things, New York and California apply different substantive law in determining when asbestos-related injury occurs (see California Hosp. Assn. v Maxwell-Jolly, 188 Cal App 4th 559, 572-573 [Cal Ct App 2010], cert denied 565 US 815 [2011]; compare Continental Cas. Co., 80 NY2d at 651 with Montrose Chem. Corp. of Cal. v Admiral Ins. Co., 10 Cal 4th 645, 679 [1995]).
Defendant further contends that the court erred in granting plaintiffs' motion for partial summary judgment declaring that the all sums allocation and vertical exhaustion rules apply and in denying defendant's motion for partial summary judgment seeking a declaration that the policies underlying their fifth-layer excess policies are not exhausted. We reject that contention.
Initially, the court properly concluded that the losses among triggered policies must be allocated through the all sums method, which "permits the insured to collect its total liability . . . under any policy in effect during the periods that the damage occurred, up to the policy limits" (Matter of Viking Pump, Inc., 27 NY3d 244, 255 [2016] [internal quotation marks omitted]; see Roman Catholic Diocese of Brooklyn v National Union Fire Ins. Co. of Pittsburgh, Pa., 21 NY3d 139, 154 [2013]; Consolidated Edison Co. of N.Y. v Allstate Ins. Co., 98 NY2d 208, 222 [2002]). The non-cumulation and prior insurance provisions incorporated in the fifth-layer excess policies "plainly contemplate that multiple successive insurance policies can indemnify the insured for the same loss or occurrence by acknowledging that a covered loss or occurrence may 'also [be] covered in whole or in part under any other excess [p]olicy issued to the [insured] prior to the inception date' of the instant polic[ies]," thus rendering all sums the appropriate allocation method (Viking Pump, 27 NY3d at 261; see Matter of Liquidation of Midland Ins. Co., 171 AD3d 564, 564-565 [1st Dept 2019]). The court also properly concluded that vertical exhaustion—which "allow[s] the [i]nsureds to access each excess policy once the immediately underlying policies' limits are depleted, even if other lower-level policies during different policy periods remain unexhausted"—is required here (Viking Pump, 27 NY3d at 264; see Liquidation of Midland Ins. Co., 171 AD3d at 565).
Defendant nonetheless contends that the court's holding that plaintiffs can access coverage under the fifth-layer excess policies is erroneous because plaintiffs entered a settlement agreement with the umbrella and third-layer excess insurer providing for pro rata time-on-the-risk allocation and, therefore, the underlying policies are not, and may never be, "depleted" and thus the fifth-layer excess policies may not attach. We reject that contention. Defendant's obligations are governed by the terms of the fifth-layer excess policies and, contrary to defendant's contention, those policies follow form with respect to the umbrella policy's "loss payable" condition, which provides, in relevant part, that "[l]iability . . . with respect to any occurrence shall not attach unless and until the Assured, or the Assured's underlying insurers, shall have paid the amount of the underlying limits on account of such occurrence." Thus, contrary to defendant's assertion that the underlying policies may be depleted only by payment by the insurer, the subject condition "plainly contemplates payment by either the insured or the underlying insurer to exhaust the policy's limits" (Hopeman Bros., Inc. v Continental Cas. Co., 307 F Supp 3d 433, 476 [ED Va 2018] [emphasis added]; cf. Forest Labs., Inc. v Arch Ins. Co., 38 Misc 3d 260, 263-267 [Sup Ct, NY County 2012], affd 116 AD3d 628 [1st Dept 2014], lv denied 24 NY3d 901 [2014]; JP Morgan Chase & Co. v Indian Harbor Ins. Co., 98 AD3d 18, 22-23 [1st Dept 2012], lv denied 20 NY3d 858 [2013]). The other policy provisions upon which defendant relies do not warrant a different conclusion. We thus conclude that, contrary to defendant's contention, the court properly declared that the fifth-layer excess policies attach when the amounts paid by plaintiffs and the underlying insurers reach the attachment point for the fifth-layer excess policies.
Contrary to defendant's additional contention, we conclude that the court properly granted plaintiffs' motion for partial summary judgment declaring, with respect to defendant's limit reduction defense, that pursuant to the narrow definition of "loss" under the subject non-cumulation and prior insurance provisions, the court would adopt a pro tanto approach to applying settlement credits, if any, and that the burden would be on defendant to establish the amount recovered on the particular claim at issue (see Olin Corp. v OneBeacon Am. Ins. Co., 864 F3d 130, 149-151 [2d Cir 2017]; Olin Corp. v Lamorak Ins. Co., 2018 WL 1901634, *8-9 [SD NY, Apr. 18, 2018, No. 84-CV-1968 (JSR)], appeal dismissed 2019 WL 2237477 [2d Cir, Jan. 14, 2019, Nos. 18-1532(L), 18-1655(XAP)]; cf. Hopeman Bros., 307 F Supp 3d at 456-459).
Finally, addressing plaintiffs' cross appeal, we conclude that the court properly granted defendant's motion for partial summary judgment declaring that, pursuant to the provisions of the fifth-layer excess policies, defendant is not required to pay or reimburse any of plaintiffs' defense costs without defendant's consent, which has not been sought or given in this case (see AstenJohnson v Columbia Cas. Co., 483 F Supp 2d 425, 480, 480 n 49 [ED Pa 2007], affd in part and revd in part 562 F3d 213 [3d Cir 2009], cert denied 558 US 991 [2009]).
Entered: October 9, 2020
Mark W. Bennett
Clerk of the Court