******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MARTIN FRANCHISES, INC.
*v.* COOPER U.S., INC.
(AC 37770)

Beach, Keller and Lavery, Js.

*Argued January 6—officially released April 12, 2016*

(Appeal from Superior Court, judicial district of Fairfield, Hon. Richard P. Gilardi, judge trial referee [summary judgment as to liability; articulation]; Hon. Edward F. Stodolink, judge trial referee [judgment].)

*Richard F. Connors*, for the appellant (defendant).

*Timothy D. Miltenberger*, for the appellee (plaintiff).

*Opinion*

KELLER, J. The defendant, Cooper U.S., Inc., appeals following the trial court's rendering of summary judgment in favor of the plaintiff, Martin Franchises, Inc. On appeal, the defendant claims that the court erred in rendering summary judgment in favor of the plaintiff on the following two grounds: (1) the court improperly concluded that there was no genuine issue of material fact; and (2) the court held the defendant to an incorrect burden of proof in its opposition to the plaintiff's motion for summary judgment. We reverse the trial court's judgment and remand the case to that court with direction to deny the plaintiff's motion for summary judgment and to conduct further proceedings according to law.

Our resolution of this appeal is informed by the following procedural history. This controversy arose from LaVerne Perezi's contraction of mesothelioma and her subsequent commencement of a product liability action (Perezi action), in August, 2012, against numerous defendants, one of which was the plaintiff in the present appeal.[1] Thereafter, on February 19, 2013, the plaintiff in the present appeal filed a motion to implead the defendant in the present appeal, claiming that the defendant was, or may have been, liable for all or part of Perezi's claim. On this same date, the plaintiff also filed its answer, in which it claimed that it "did not exist at the time of [Perezi's] exposure to asbestos" and that it "never manufactured any products that contained any type of asbestos." On March 4, 2013, the court, *Bellis, J.*, granted the plaintiff's motion to implead the defendant.[2] The plaintiff then served the defendant with a complaint, which it labeled "Third-Party Complaint," and for reasons unknown to the parties and to this court, the action was assigned a separate docket number. This complaint is the operative complaint in the present appeal.

Perezi, in her three count complaint, alleged in the first count that "[e]ach of the defendants, and/or their predecessors in interest . . . has produced, manufactured or distributed asbestos and/or asbestos products,"[3] and that these products caused her to contract mesothelioma.

The plaintiff's complaint against the defendant contained two counts, the first of which sounded in breach of contract and the second of which sounded in contribution and/or indemnification. In the complaint, the plaintiff alleged the following:

"On May 1, 1978, [the plaintiff] entered into an agreement (the '1978 Agreement') with McGraw-Edison, a predecessor in interest to [the defendant], (the 'Seller'), to purchase certain assets from McGraw-Edison relating to McGraw-Edison's dry-cleaning business. . . .

"Pursuant to the 1978 Agreement, [the plaintiff]

acquired said assets of [McGraw-Edison], the Seller.
. . .

"Under the 1978 Agreement, [McGraw-Edison], the Seller, assumed and retained all liability for any subsequent claims made against [the plaintiff] or its successors based upon or arising out of [McGraw-Edison's] products and operations that occurred prior to May 1, 1978. . . .

"Under the 1978 Agreement, [the defendant, as successor in interest to McGraw-Edison], is contractually obligated to defend and indemnify [the plaintiff] for the claim submitted by . . . LaVerne Perezi in the [Perezi] action. . . .

"[The plaintiff] has repeatedly requested that [the defendant] defend and indemnify [the plaintiff] in the [Perezi] action, but [the defendant] has refused to do so."

In the first count of the complaint, the plaintiff further alleged that "[Perezi] alleges that she was injured as a result of exposure to products at a dry-cleaning facility in the early 1960s. Under the terms and conditions of the 1978 Agreement, [the defendant] is contractually obligated to defend and indemnify [the plaintiff] with respect to the claims for relief asserted against [the plaintiff] in the [Perezi action]. . . .

"[The plaintiff] has demanded that [the defendant] indemnify it for all defense costs, settlements, judgment or other damages, losses, or expenses incurred by [the plaintiff] as a result of the claims for relief asserted against [the plaintiff] in the [Perezi] action. . . .

"[The plaintiff] has fully performed all of its obligations under the 1978 Agreement. . . .

"Despite [the plaintiff's] demand, [the defendant] has refused to perform its contractual obligations."

In the second count of the complaint, the plaintiff further alleged the following:

"Any negligence on behalf of [the plaintiff] was passive and secondary, while [the defendant's] negligence was active and primary. . . .

"To the extent [the plaintiff] is held liable for any portion of [Perezi's] damages, if any, [the plaintiff] is entitled to contribution or indemnification from [the defendant] for the entire amount, plus costs and interest."

On September 5, 2014, the plaintiff filed a motion for partial summary judgment, alleging, inter alia, that there was no genuine issue of material fact as to whether the defendant was obligated to indemnify the plaintiff and defend it in the Perezi action pursuant to the language in the 1978 agreement between the plaintiff and McGraw-Edison, the defendant's predecessor in interest. Specifically, the plaintiff alleged in its memorandum of law in

support of the motion that on May 1, 1978, it had been incorporated and that it had entered into a purchase agreement by which it agreed to purchase certain assets from the defendant's predecessor in interest, McGraw-Edison. The plaintiff also stated that in April, 1985, the defendant had acquired McGraw-Edison, thereby making the defendant a successor in interest with respect to the 1978 agreement. The plaintiff alleged that pursuant to the 1978 agreement, it had purchased a plant facility in Ohio from McGraw-Edison, as well as a trade name, "Martin," which McGraw-Edison had used in connection with a division of the company known as "Martin Equipment Sales." The plaintiff further alleged that section 5.1 of the 1978 agreement provided that it had agreed to assume certain liabilities of McGraw-Edison, but that this section also specified certain liabilities that it had not assumed from McGraw-Edison. In this vein, the plaintiff indicated that section 5.1 of the 1978 agreement specifically provided that the plaintiff had not assumed "any liabilities or obligations, whether contingent or absolute, accrued or unaccrued, or known or unknown, for . . . product liability claims that relate to any products manufactured, sold and shipped by McGraw-Edison . . . or its predecessors prior to the Closing . . . ." (Emphasis omitted.) The plaintiff further stated that section 14.9 of the 1978 agreement provided that the defendant, as successor in interest to McGraw-Edison, had agreed to pay all costs and expenses that the plaintiff would incur if it were to be named as a defendant in a lawsuit relating to any liability retained by the defendant pursuant to section 5.1 of the 1978 agreement.[4]

In the memorandum of law in support of its motion, the plaintiff also alleged that Perezi had claimed in her action that "she could have come into contact with asbestos-containing products directly and through secondary exposure from two of her husbands." Furthermore, on the basis of Perezi's and her son's deposition testimony and pleadings in the Perezi action, the plaintiff alleged the following about the Perezi action: "With respect to [the plaintiff], [Perezi] alleges liability [for her contraction of mesothelioma] based upon her work, and her former husband's work, at a dry-cleaning facility. . . . Perezi ceased working at the dry-cleaning facility in 1963—fifteen years before [McGraw-Edison, the defendant's predecessor in interest] sold assets and the trade name to [the plaintiff]. . . . The only piece of equipment in the facility that . . . Perezi can link to [the plaintiff] is a dry-cleaning machine." (Citations omitted.) The plaintiff also argued that because the 1978 agreement was an unambiguous contract that had been entered into by two sophisticated commercial entities, the court must enforce the agreement's terms as written. Thus, the plaintiff referred to the language in section 5.1 of the 1978 agreement and argued that it was "undisputed" that the Perezi action brought against

the plaintiff should have been brought against the defendant because the action related to "a product that was manufactured, sold and shipped more than a decade before the 1978 Agreement (indeed, before [the plaintiff] even existed)."

The plaintiff also relied on the evidence submitted in the Perezi action in support of its argument that there was no genuine issue with respect to the defendant's obligation to defend and indemnify the plaintiff under the 1978 agreement. Specifically, the plaintiff asserted the following: "The sole evidence supporting any claim by . . . Perezi against [the plaintiff] is the [deposition] testimony of [her] son. . . . According to [Perezi's son], a dry-cleaning machine in the store where . . . Perezi and her husband worked in the 1950s and early 1960s was stamped, 'Martin'—the trade name then being used by [McGraw-Edison, the defendant's predecessor in interest]. . . . It was the only piece of equipment in the store that had such a marking. . . . Perezi was exposed to this machine (either on her own or through washing the clothes of her husband until only 1963 at the latest." (Citations omitted.) Therefore, the plaintiff argued that it "did not and could not" have manufactured, sold, or shipped the alleged asbestos-containing dry-cleaning machine to which Perezi was exposed because the plaintiff did not even exist until 1978, which the plaintiff noted was at least fifteen years after Perezi's alleged exposure. Thus, the plaintiff argued that pursuant to section 5.1 of the 1978 agreement, the defendant, as McGraw-Edison's successor in interest, was indisputably obligated to indemnify the plaintiff for its defense in the Perezi action because the "Martin" stamped dry-cleaning machine was manufactured, sold, and shipped before 1978, thereby foreclosing the possibility that the plaintiff was liable for the harm that the machine had caused to Perezi.

The plaintiff attached the following documents to its motion for partial summary judgment: a copy of the 1978 agreement; the plaintiff's Ohio and Delaware incorporation documents; printed copies of the defendant's business webpage; Perezi's medical records; transcripts of Perezi's deposition and her son's deposition; billing records for the plaintiff's attorneys; copies of several pleadings, discovery requests, and discovery responses from the Perezi action; and copies of correspondence between counsel for the plaintiff during the 1970s and various Delaware and Ohio state officials. Additionally, the plaintiff submitted two affidavits, including one in which the plaintiff's attorney was the affiant and another in which the plaintiff's vice president and secretary, Erin M. Welte, was the affiant.

In her September 3, 2014 affidavit, Welte averred that she had been employed by the plaintiff since July 22, 2002, and that her duties included "review of Franchise Agreements, review and maintenance of all contracts

with vendors and third parties, updating Martin's Franchise Disclosure Document pursuant to FTC regulations, maintenance of all legal files on behalf of the company, and interaction with attorneys, human resources and office management." Welte made several averments with respect to the plaintiff's corporate history and its relationship to the defendant, and she also made averments about the 1978 agreement, stating that "[p]ursuant to the [a]greement, [the plaintiff] purchased certain assets from [the defendant], including . . . a trade name that [the defendant] used in connection with a division of the company known as 'Martin Equipment Sales.'" Furthermore, Welte averred that "[t]he trade name acquired from [the defendant] was the name 'Martin,' which [the plaintiff] took as part of its corporate name two months after the transaction with [the defendant]," that "McGraw-Edison used the Martin or 'Martinizing' name to market some of its products," that "[s]ome of the equipment made by [the defendant] under the trade name 'Martin' was dry-cleaning equipment," and that "[the plaintiff] has no record of McGraw-Edison ever . . . manufacturing, distributing or selling any dry-cleaning machine that contained asbestos."

The defendant filed its answer to the plaintiff's complaint on October 7, 2014. In its answer to the first count, the defendant denied that it was contractually obligated to defend and indemnify the plaintiff in the Perezi action. The defendant also summarily denied the allegations in the second count of the complaint. Furthermore, the defendant pleaded two special defenses, the first of which was that the plaintiff's claim was barred by the statute of limitations set forth in General Statutes § 52-576, and the second of which was that "[t]o the extent that [the plaintiff's] claim is one for indemnification, it is premature as its own liability for any claim has not yet been determined."

On October 9, 2014, the defendant filed its motion in opposition to the plaintiff's motion for partial summary judgment and an accompanying memorandum of law, in which it argued that the plaintiff was not entitled to summary judgment because it had failed to satisfy its burden of proving the nonexistence of any genuine issue of material fact. The defendant primarily contested the validity of Welte's affidavit. The defendant argued in its opposition memorandum that Welte had not demonstrated personal knowledge of, or offered any other evidentiary foundation for, the averments in her affidavit, particularly her averments that the plaintiff had acquired the "Martin" trade name from McGraw-Edison pursuant to the 1978 agreement,[5] that McGraw-Edison had used the "Martin" or "Martinizing" name to market some of its products, and that some of the equipment that the defendant had made under the "Martin" trade name was dry-cleaning equipment. The defendant argued that the deposition testimony of Perezi's son

was also dubious because he had testified about events that had occurred when he was younger than ten years old, nearly fifty years earlier.

On October 16, 2014, the court, *Hon. Richard P. Gilardi*, judge trial referee, issued an order granting summary judgment to the plaintiff. In its order, the court stated that it "finds that there can be no factual dispute as to the defendant's obligation to hold the plaintiff harmless under the 1978 agreement and that claims have been filed for which the defendant [has] the obligation to provide a defense and potentially, damages."

On February 4, 2015, the Perezi action was withdrawn as to all defendants. Following the grant of summary judgment to the plaintiff, the court, *Hon. Edward F. Stodolink*, judge trial referee, held a hearing in damages on February 19, 2015. At the conclusion of the hearing, the court issued an order awarding the plaintiff $35,844.58 for reasonable attorney's fees, which represented the cost of the plaintiff's defense in the Perezi action. Judge Stodolink specifically stated that he had reviewed the affidavits submitted in the matter in reaching his decision in favor the plaintiff. On March 10, 2015, the defendant filed the present appeal, challenging the court's order granting summary judgment to the plaintiff.

On April 8, 2015, the defendant filed a motion for articulation pursuant to Practice Book § 66-5, wherein it sought that the court "articulate the facts upon which it based its conclusion that [the] defendant had an obligation to hold [the] plaintiff harmless and indemnify it under the 1978 Agreement and on what basis it concluded that the plaintiff showed that there are no genuine issues of material fact to be adjudicated."

The court issued an articulation on May 12, 2015, in which it summarized the parties' submitted proof and clarified its reasoning in reaching the conclusion that there was no genuine issue of material fact with respect to the defendant's obligation, under the 1978 agreement, to defend and indemnify the plaintiff for the Perezi action. The articulation reflects that, over the defendant's objection, the court relied on Welte's affidavit in granting the plaintiff summary judgment. Most notably, the court stated in the articulation that Welte's affidavit showed that the dry-cleaning equipment made by McGraw-Edison, the defendant's predecessor in interest, used the "Martin" trade name and that the plaintiff also had purchased the "Martinizing" trade name pursuant to the 1978 agreement. The court also accepted the plaintiff's proof, pursuant to Perezi's and her son's deposition testimony, that the alleged asbestos-containing dry-cleaning machine to which Perezi was exposed bore the "Martin" stamp and that the dry-cleaning facility in which Perezi worked at the time used the "Martinizing" trade name. Ultimately, the court deter-

mined that the documentary proof that the plaintiff had attached to its motion for partial summary judgment—which included the Welte affidavit and the transcripts for the depositions of Perezi and her son—"summarily show[ed] that the defendant's predecessor, McGraw-Edison, manufactured and/or delivered a product several years before the [1978 agreement] and which is the subject of the claim of product liability filed against the plaintiff, and as such, obligated the defendant [to] comply with the [hold] harmless requirement included in the [1978 agreement]." The court also emphasized that the defendant had not submitted any affidavit or documentary proof of its own in opposition to the plaintiff's motion for partial summary judgment. Accordingly, the court determined that summary judgment in favor of the plaintiff was warranted, and it stated that "[h]ad this been a trial, it is the finding of the court that a directed verdict would be required."

The defendant claims on appeal that the court improperly rendered summary judgment in favor of the plaintiff. It argues that the court erred in this regard because it improperly concluded that the plaintiff had met its evidentiary burden in moving for summary judgment where one of the crucial pieces of evidence that it submitted was Welte's affidavit, which failed to resolve all of the issues of material fact in the plaintiff's action in the plaintiff's favor due to Welte's failure to show affirmatively that she had personal knowledge of the substance of the averments set forth in her affidavit. We agree with the defendant that the court erred on this ground and we therefore reverse the court's summary judgment rendered in favor of the plaintiff.[6]

"The standards governing our review of a trial court's decision to grant a motion for summary judgment are well established. Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . A material fact . . . [is] a fact which will make a difference in the result of a case. . . . [T]he scope of our review of the trial court's decision to grant the plaintiff's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Romprey* v. *Safeco Ins. Co. of America*, 310 Conn. 304, 312–13, 77 A.3d 726 (2013). The issue, however, of "[w]hether the court should have considered

. . . [an] affidavit submitted by the [movant for summary judgment] presents an evidentiary issue to which we apply an abuse of discretion standard of review." *Bruno* v. *Geller*, 136 Conn. App. 707, 716, 46 A.3d 974, cert. denied, 306 Conn. 905, 52 A.3d 732 (2012).

"The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to judgment as a matter of law. The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." (Internal quotation marks omitted.) *Ramirez* v. *Health Net of the Northeast, Inc.*, 285 Conn. 1, 11, 938 A.2d 576 (2008). As a part of the required showing in this regard, the movant for summary judgment must support the motion with admissible evidence.

Pursuant to Practice Book § 17-45, a motion for summary judgment must be supported by appropriate documents that pertain to the material facts of the matter, "including but not limited to affidavits, certified transcripts of testimony under oath, disclosures, written admissions and the like. . . ."[7] "Supporting *and* opposing affidavits shall be made *on personal knowledge*, shall set forth such *facts as would be admissible in evidence*, and *shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . .*"[8] (Emphasis added.) Practice Book § 17-46. Where the affidavits of the moving party do not affirmatively show that there is no genuine issue of material fact as to all relevant issues in the case, summary judgment should be denied. *Romprey* v. *Safeco Ins. Co. of America*, supra, 310 Conn. 320; *Doty* v. *Shawmut Bank*, 58 Conn. App. 427, 431, 755 A.2d 219 (2000); *Walker* v. *Lombardo*, 2 Conn. App. 266, 269, 477 A.2d 168 (1984).

In the present appeal, the defendant challenges the court's conclusion that Welte's affidavit was properly submitted as proof in support of the plaintiff's motion for summary judgment. Specifically, the defendant argues the following in its brief: (1) Welte's affidavit contains statements of material fact about which her affidavit does not show affirmatively that she is competent to testify; and (2) the 1978 agreement contradicts Welte's averments in her affidavit insofar as the agreement does not make reference to a company division known as "Martin Equipment Sales," to a "Martin" trade name, or to McGraw-Edison using the name "Martin" to market its products. The defendant thus claims that the court erred in rendering summary judgment in favor of the plaintiff because, contrary to the court's conclusion, in the absence of Welte's affidavit, which the court should not have considered, the plaintiff failed to meet its burden of establishing that there was no genuine issue with respect to a crucial material fact: that

a dry-cleaning machine to which Perezi was exposed at some point between 1957[9] and 1962—which allegedly bore the name "Martin" on it and which contained asbestos fibers in at least some of its components—was, according to the language in the 1978 agreement, a "[product] manufactured, sold and shipped by McGraw-Edison or its predecessors prior to the [1978] Closing . . . ." (Emphasis omitted.)

In opposition, the plaintiff argues that the court properly rendered summary judgment in its favor because it *had* met its burden of establishing that there was no genuine issue as to whether the alleged asbestos-containing dry-cleaning machine to which Perezi was exposed at some point prior to 1962 had been manufactured, sold, and shipped by McGraw-Edison, or its predecessors, prior to 1978. Specifically, the plaintiff argues that the documentary evidence submitted to the court at the summary judgment stage of the proceedings, including Welte's affidavit, indisputably established that the Perezi action was a "claim" contemplated by the 1978 agreement and that it related to a product that had been manufactured, sold, and shipped by McGraw-Edison or one of its predecessors, not the plaintiff, primarily because the plaintiff did not exist until 1978 and Perezi was exposed to a dry-cleaning machine that contained asbestos at some point prior to 1962. We disagree with the plaintiff's argument and conclude that the proof submitted in support of the plaintiff's motion for summary judgment did not resolve all genuine issues of material fact in the plaintiff's favor.

In *Evans Products Co.* v. *Clinton Building Supply, Inc.*, 174 Conn. 512, 391 A.2d 157 (1978), an appeal from summary judgment in a contract action, our Supreme Court analyzed the issue of whether the trial court properly had admitted three affidavits that the plaintiff had submitted in support of its motion for summary judgment. Id., 513. The plaintiff's assistant secretary was the affiant in one of the affidavits, and he made oath that the amount of money that was alleged in the contract action to be "due and owing to the plaintiff . . . [was], in all respects, correct, just and true, and that no payments [had] been made thereon and that there [were] no offsets or counterclaims thereto." (Internal quotation marks omitted.) Id., 514 n.1. After hearing the parties' arguments, the trial court granted summary judgment against the defendants and awarded the plaintiff damages. Id., 513.

On appeal, the defendants claimed that the affidavit was admitted improperly because the plaintiff's assistant secretary failed to show personal knowledge of the amount of debt that was owed to the plaintiff. Id., 513–14. In examining the affidavit at issue, our Supreme Court noted that "there is no affirmative showing of personal knowledge in the affidavit, such as a statement that the affiant is familiar with the [defendant's] account, or even that he is familiar with or controls

the plaintiff's business records." Id., 515. Moreover, the court stated that "[w]hile there is some authority for the proposition that a corporate officer presumptively has personal knowledge of the matters stated in an affidavit made on behalf of the corporation . . . in our view the better rule is that followed by the federal courts: in summary judgment proceedings, affidavits made by corporate officers and other parties must aver or affirmatively show personal knowledge of the matters stated therein." (Citations omitted.) Id.;[10] see also *Monroe* v. *Board of Education*, 65 F.R.D. 641, 648 (D. Conn. 1975) (holding certain portions of affidavit inadmissible where submitted by superintendent of school system on behalf of board of education and where affiant did not show personal knowledge of circumstances surrounding plaintiff student's expulsion, despite making averments about same).

In the present case, the Welte affidavit was of crucial importance to the plaintiff's motion for summary judgment because in the absence of her affidavit, the proof submitted by the plaintiff in support of its motion could not have provided the court with an adequate basis to conclude that there was no genuine issue with respect to whether the dry-cleaning machine to which Perezi was exposed prior to 1962 was one that had been manufactured, sold, and shipped by McGraw-Edison or any of its predecessors prior to 1978. In her affidavit, Welte made several averments that related to this issue: (1) she averred that McGraw-Edison, the defendant's predecessor in interest, had a company division called "Martin Equipment Sales" from which the plaintiff had purchased a trade name pursuant to the 1978 agreement; (2) she averred that the plaintiff had purchased the "Martin" trade name from McGraw-Edison; (3) she averred that McGraw-Edison had used the "Martin" or "Martinizing" name to market some of its products; (4) she averred that some of the equipment made by McGraw-Edison under the "Martin" trade name included dry-cleaning equipment; and (5) she averred that the plaintiff had no record of McGraw-Edison ever manufacturing, distributing, or selling any dry-cleaning machine that contained asbestos. Despite these averments and the trial court's conclusion that the Welte affidavit, along with the other documentary proof submitted by the plaintiff in support of its motion for summary judgment, "summarily show[ed] that . . . McGraw-Edison manufactured and/or delivered" the asbestos-containing dry-cleaning machine to which Perezi was exposed at some point prior to 1962, we conclude that this proof, and the Welte affidavit in particular, failed to adequately show the nonexistence of a genuine issue of material fact in this case.

Pursuant to our Supreme Court's holding in *Evans Products Co.* v. *Clinton Building Supply, Inc.*, supra, 174 Conn. 515, we do not presume that Welte, as a corporate officer for the plaintiff, was competent to

make averments as to the matters stated in her affidavit. Therefore, in order for Welte's affidavit to be admissible as supporting evidence for the plaintiff's motion for summary judgment, she was required to affirmatively show that she had personal knowledge of the matters stated in her affidavit. Welte failed to meet this requirement because she did not affirmatively state in her affidavit that she had reviewed the business records of the plaintiff. Furthermore, Welte did not affirmatively state that she had any basis for knowing that McGraw-Edison had a division called "Martin Equipment Sales" from which the plaintiff purchased a trade name under the 1978 agreement, that the plaintiff had acquired the "Martin" trade name from McGraw-Edison, that McGraw-Edison had used the "Martin" or "Martinizing" trade names to market some of its products, or that McGraw-Edison manufactured dry-cleaning equipment under the trade name "Martin." In the absence of such an affirmative showing, the possibility that some company other than McGraw-Edison or one of its predecessors manufactured dry-cleaning equipment bearing the "Martin" trade name during the 1950s and early 1960s cannot be foreclosed.[11]

Although Welte averred that her position as the plaintiff's vice president and secretary required her to review and maintain franchise agreements, contracts with third parties, and all legal files relating to the company, she did not make any reference to her review of any of these records *as they relate to the defendant's predecessor in interest*, McGraw-Edison, or any of *its* predecessors, which is an essential factor in construing the defendant's obligations under the 1978 agreement. Furthermore, Welte, who began working for the plaintiff approximately forty-four years after the time period during which Perezi could have been exposed to the asbestos-containing dry-cleaning machine at issue, failed to refer to a chronology in her affidavit with respect to when the plaintiff acquired certain trade names or when the defendant's predecessor in interest, McGraw-Edison, manufactured, sold, or shipped any dry-cleaning products bearing the "Martin" or "Martinizing" trade names. In light of the shortcomings of Welte's averments, we conclude that the court abused its discretion by deeming Welte's affidavit to be admissible in support of the plaintiff's motion for summary judgment. The affidavit did not comply with Practice Book § 17-46 because there was no affirmative showing that Welte was competent to testify to the plaintiff's past relationship with McGraw-Edison, the "Martin" and "Martinizing" trade names, or the company division known as "Martin Equipment Sales." For instance, Welte did not state that she had reviewed any specific documents that would give her personal knowledge of these matters and she did not otherwise aver as to her involvement in those matters. In reaching our conclusion, we are mindful of our Supreme Court's assertions

relating to summary judgment proceedings that "[i]t is especially appropriate to hold an affidavit submitted by a moving party to a stringent standard" and that "the nonmovant is . . . given the benefit of all favorable inferences that can be drawn." *Evans Products Co.* v. *Clinton Building Supply, Inc.*, supra, 174 Conn. 516.

As our Supreme Court did in *Evans Products Co.* v. *Clinton Building Supply, Inc.*, supra, 174 Conn. 516–17, we next examine whether the court's improper acceptance and reliance upon the Welte affidavit as proof of the nonexistence of a genuine issue of material fact was harmful to the defendant as the opponent of summary judgment. We conclude that the court's reliance upon of the Welte affidavit was harmful to the defendant in this case. Aside from the Welte affidavit, the other proof[12] that the plaintiff submitted in support of its motion for summary judgment did not adequately establish that there was no genuine issue with respect to the material fact at issue in this appeal: whether a dry-cleaning machine to which Perezi was exposed at some point between 1957 and 1962—which allegedly bore the name "Martin" on it and which contained asbestos fibers in at least some of its components—was, according to the language in the 1978 agreement, a "[product] manufactured, sold and shipped by McGraw-Edison or its predecessors prior to the [1978] Closing . . . ." (Emphasis omitted.) Accordingly, the court erred in rendering summary judgment in favor of the plaintiff.

The judgment is reversed and the case is remanded with direction to deny the plaintiff's motion for summary judgment and for further proceedings according to law.

In this opinion the other judges concurred.

[1] On September 14, 2013, Perezi died and the executrix of her estate pursued the action in her place.

[2] The court ordered the plaintiff to serve the defendant by March 21, 2013, and to designate a return date of April 2, 2013.

[3] The second count made allegations against only a single defendant, Metropolitan Life Insurance Company. The third count once again made allegations against all defendants, including the plaintiff in the present appeal. Specifically, Perezi alleged in the third count that the defendants committed acts and/or omissions that constituted "grossly negligent, willful, wanton, malicious and/or outrageous" misconduct because, despite the fact that they had knowledge of medical and scientific data concerning the harmful health effects of asbestos and asbestos-containing products, they continued to manufacture products that contained asbestos.

[4] Specifically, the plaintiff alleged that "[i]n subpart (b) of Section 14.9, 'McGraw-Edison [Cooper] agrees to indemnify and hold [Martin] harmless from and against any and all damages arising out of that claim.' "

[5] The defendant further pointed out in its memorandum of law that the 1978 agreement specifically referenced the trade names that the plaintiff acquired from McGraw-Edison, and that none of these expressly stated trade names include "Martin."

[6] The defendant also claims that the court erred by applying an erroneous standard as to the procedural burden of the opponent of a motion for summary judgment. Specifically, the defendant argues that the court seemingly based its decision to grant summary judgment in favor of the plaintiff upon the defendant's failure to submit any supporting affidavits or other evidence in opposition to the plaintiff's motion for summary judgment. This basis for the court's decision, the defendant argues, constitutes reversible

error because pursuant to Connecticut case law, the burden never shifted to the defendant to produce such evidence because the plaintiff had failed to satisfy its own, prerequisite burden of producing admissible evidence in support of its motion for summary judgment.

In *Mott* v. *Wal-Mart Stores East, LP*, 139 Conn. App. 618, 57 A.3d 391 (2012), this court noted that "pursuant to Practice Book §§ 17-45 and 17-46, a party opposing a summary judgment motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . [T]ypically [d]emonstrating a genuine issue requires a showing of evidentiary facts or substantial evidence outside the pleadings from which material facts alleged in the pleadings can be warrantably inferred. . . .

"An important exception exists, however, to the general rule that a party opposing summary judgment must provide evidentiary support for its opposition, and that exception has been articulated in our jurisprudence with less frequency than has the general rule. On a motion by [the] defendant for summary judgment the burden is on [the] defendant to negate each claim as framed by the complaint. . . . It necessarily follows that it is only [o]nce [the] defendant's burden in establishing his entitlement to summary judgment is met [that] the burden shifts to [the] plaintiff to show that a genuine issue of fact exists justifying a trial." (Citation omitted; internal quotation marks omitted.) Id., 625–26. Accordingly, "[*w*]*hen documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue.*" (Emphasis added.) *Allstate Ins. Co.* v. *Barron*, 269 Conn. 394, 405, 848 A.2d 1165 (2004); accord *Plouffe* v. *New York, N.H. & H.R. Co.*, 160 Conn. 482, 491, 280 A.2d 359 (1971); *Mott* v. *Wal-Mart Stores East, LP*, supra, 139 Conn. App. 627.

In the present case, insofar as it appears that the court required the defendant, as opponent to summary judgment, to produce affidavits and other documentary evidence to demonstrate the existence of a genuine issue of material fact when the plaintiff, as movant for summary judgment, had not first satisfied its own burden of producing affidavits and other documentary evidence to demonstrate the nonexistence of such an issue, we agree with the defendant that the court erred. Nevertheless, we need not discuss this error in further detail because we conclude that the court committed reversible error by accepting and relying upon the Welte affidavit and thereby concluding that the plaintiff was entitled to summary judgment because it had met its evidentiary burden as the movant.

[7] A party opposing a motion for summary judgment also must, "at least five days before the date the motion is to be considered on the short calendar file opposing affidavits and other available documentary evidence." Practice Book § 17-45.

[8] Practice Book § 17-46 further provides in relevant part that "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto."

[9] The plaintiff represented to this court that the year in which McGraw-Edison was founded was 1957.

[10] Accordingly, our Supreme Court concluded that the trial court erred by accepting and relying upon at least one of the plaintiff's affidavits, but it nevertheless concluded that this error was harmless in light of other evidence which it deemed to have been properly considered by the trial court. *Evans Products Co.* v. *Clinton Building Supply, Inc.*, supra, 174 Conn. 516–18.

[11] In fact, at oral argument before this court, the plaintiff's attorney conceded that it was not known that there was no other company that marketed dry-cleaning products or franchises using the "Martin" or "Martinizing" trade names during the time of Perezi's possible exposure.

[12] As previously stated in this opinion, this documentary proof included the following: a copy of the 1978 agreement; the plaintiff's 1978 certificate of incorporation for the state of Delaware; the plaintiff's application to transact business as a foreign corporation in the state of Ohio; an official statement of incorporation from the secretary of the state of Delaware; correspondence written to the secretary of the state of Ohio, wherein the Ohio attorneys representing the plaintiff in 1978 indicated that the plaintiff had changed its name from "GJM Corporation" to "Martin Franchises, Inc."; correspondence written to the secretary of the state of Ohio, wherein the Ohio attorneys representing the plaintiff in 1978 had enclosed the plaintiff's license as a foreign, for profit corporation seeking to transact business in Ohio; an official certificate issued by the secretary of the state of Ohio indicating that it had retained the plaintiff's records of incorporation; a printout of the defendant's corporate website, which included information

about the defendant's products and services, its corporate structure, and its history; an affidavit in which the plaintiff's attorney in the present appeal was the affiant; a copy of Perezi's first amended complaint in the Perezi action; several pleadings from the Perezi action; Perezi's medical records; the transcript of Perezi's October 22, 2012 deposition; the transcript of Perezi's son's April 9, 2014 deposition; and the billing records for the plaintiff's attorneys in the Perezi action.